The State v. Morphy.

## THE STATE v. MORPHY.

1. Evidence: MEDICAL EXPERTS. The opinions of medical men who are shown to be experts, as to the instrument producing, and the nature and consequence of, wounds or the causes of disease, are competent evidence in a prosecution for homicide.

2. Jury: INTOXICATING LIQUORS. The fact that a juror, in a prosecution for homicide, during the progress of the trial used intoxicating liquor, combined with other curative agents, as a medicine, without medical advice, will not vitiate the verdict in the absence of any showing that it was so used without the knowledge of the prisoner or his counsel, or that its effects were intoxicating.

3. Instructions: ERROR WITHOUT PREJUDICE. The refusal of an instruction substantially embodied in those given by the court constitutes no sufficient ground for reversal.

4. Criminal law: MURDER IN SECOND DEGREE: INTENT TO KILL. An intent to kill is not necessary to constitute murder in the second degree under our statute. If there were no necessity, either real or apparent, for the killing, a party would be guilty of murder in the second degree, although he entered the combat without the intent to kill; especially would this be true if there were undue advantage taken by the slayer, and the use by him of a deadly weapon.

5. —— NEGLECT OF WOUND: REASONABLE DOUBT: ONUS. If death ensues from a wound given in malice but not in its nature mortal, but from which being neglected or mismanaged the party dies, this will not excuse the prisoner who gave it, but he will be held guilty of the murder, unless he can make it clearly appear that the maltreatment of the wound, or the medicine administered to the patient, or his own misconduct, and not the wound itself, was the sole cause of his death.

6. —— The State has the burden of proof to show beyond a reasonable doubt the guilt of the accused; hence, any negative matter, such as the absence of self-defense, the want of sufficient provocation, etc., must be shown by the State; but whenever the matter of defense is

wholly disconnected from the body of the offense charged, and is distinct affirmative matter, the burden of proof thereof is upon the defendant.

### Appeal from Louisa District Court.

### FRIDAY, FEBRUARY 23.

THE defendant was indicted for murder in the second degree. He was charged with having cut and wounded one B. B. Watts upon the head with a knife on the 7th day of October, 1870, of which wounds the said Watts thereafter died. The defendant was tried by a jury and found guilty. From the judgment and sentence upon the verdict the defendant appeals.

*Cloud & Broomhall* and *Bird & Tatlock* for the appellant.

*Frank Springer* with *H. O'Connor*, attorney-general, for the State.

COLE, J. — I. From the evidence, as embodied in the transcript, we learn that the crime charged was committed

1. EVIDENCE: medical experts.

just after night-fall; that the defendant, in a state of partial intoxication, went to the meat market kept by the deceased and began an altercation with him; the defendant was soon ordered to leave, and as he stepped out, the door was closed upon him and bolted by the wife of the deceased; the defendant then turned and kicked the door open, whereupon the deceased knocked him down, and, in the struggle which ensued, the deceased received a wound in the temple, by a knife, from which death subsequently followed.

Several witnesses, who were practicing physicians and surgeons, testified in behalf of the State, and, among others, they were asked, and, against the defendant's objections, answered the following questions: With what kind of an

instrument, in your opinion, were the wounds upon the deceased produced, whether a blunt or sharp instrument? With a sharp metal instrument. From your examination of the body of the deceased, what, did you conclude, was the cause of his death? I think it was inflammation of the brain. What, in your opinion, produced the inflammation of the brain? It is my opinion it was produced by the wounds upon the temple. The ruling of the court admitting these answers is the first assigned error.

There is no question made but that these witnesses were learned and experienced in their profession, and were competent as experts. The ground of objection is, that the testimony is not such as might properly be given by experts. The applicant's counsel cite in support of their objection the cases of *Whitmore* v. *Bowman*, 4 G. Greene, 148, and *The State* v. *Vincent*, 24 Iowa, 570 (*i. e.*), 576. Each of these cases recognizes the doctrine which supports the ruling of the court, while they also show the limitations of that doctrine. Indeed, the rule which admits the testimony of medical men as to the instruments producing, and the nature of wounds, the cause of a disease or the consequences of wounds, is elemental, and is so recognized and laid down by the best writers upon the law of evidence. 1 Green. on Ev., § 440 and cases cited, note 4; 1 Phil. on Ev. (4th Am. ed. 3 C. & H. notes), p. 778, and cases cited in notes, 304; Stark. on Ev. (Notes by Sharswood, 1 vol., ed. 1859), marg. pp. 96 and 173, and cases there cited. Says this last author: "Thus the relation between a particular injury inflicted on a man's body and the death of that man is an inference to be made by medical skill and experience, and may be proved by one who possesses those qualifications (96). * * * The general distinction is this, that the jury must judge of the facts for themselves, but that whenever the question depends on the exercise of peculiar skill and knowledge that may be made available, it is not a decision by the witness on a fact to the exclusion

of the jury, but the establishment of a new fact, relation, or connection, which would otherwise remain unproved. Not to admit such evidence would be to reject what is essential to the investigation of truth " (173).

II. The second and third assigned errors are, that the verdict is contrary to the law, as given by the court; and that it is not supported or warranted by the evidence. It is only necessary for us to remark, that from the evidence, as presented by appellant's counsel in the abstract, the verdict certainly finds an adequate support. We deem it unnecessary to occupy the space requisite for its further statement or discussion.

III. It is next assigned as error that the court refused to set aside the verdict of the jury on the ground that one of 3. JURY: intoxicating liquors. the jurors drank intoxicating liquor during the progress of the trial. The affidavits as to the fact that the juror did so drink are not set out in full in the abstract. So far as we are able to determine the circumstances upon the abstract and arguments they are, that one of the jurors, not in the habit of drinking, was ill during the trial, and took for medicinal purposes, without medical advice or prescription, some brandy and blackberry balsam or mixture; that it was done during the hearing of the case and not after the jury retired. There is no showing or claim that its effects were intoxicating or other than remedial; nor is it shown that the facts concerning it were not well known to defendant and his counsel at the time and before the cause was submitted to the jury. The case is not, either in its facts or principles, within *The State* v. *Baldy*, 17 Iowa, 39, nor *Ryan* v. *Harrow*, 27 id. 494, and there was no error in the action of the court in this respect.

IV. The court gave to the jury full and extended instructions, twenty-four in number, and they would occupy full ten pages of our reports. Those numbering from six to twelve inclusive and from sixteen to twenty-

three were excepted to and the giving of them is assigned as error. The appellant's counsel, in their argument, do not controvert the abstract correctness of any of the instructions given, but assume that there was no testimony upon which to base them. We quote from the argument to show this. As to the sixth, it is said that " by looking through all the evidence in the case, it will be seen that there is not a syllable upon which to base this instruction." Again, " the seventh, eighth, ninth and tenth instructions would be good law if the facts of the case would warrant them." As to the eleventh and twelfth it is said, " these instructions presuppose a state of facts that did not exist." Of the sixteenth instruction it is said " while the instruction thus gives the law correctly, it only does so after," etc., and as to the seventeenth, eighteenth, nineteenth and twentieth, it is said " these instructions are wrong because they presuppose that the assault was made because of provoking language to deceased, of which there is no evidence," etc. Of the twenty-first, it is said that it is wrong " upon the testimony " before the court; while the twenty-second and twenty-third, upon the subject of " reasonable doubt," are not discussed. No useful purpose, either for this case or for any other, could be subserved by setting out at length the testimony which shows a sufficient foundation for these several instructions. They properly submit to the jury the finding of the facts to establish the various hypotheses upon which they rest. It is only when viewed from the stand point of defending counsel that the testimony whereon to rest the instructions is wanting. From the stand point of impartiality that testimony is reasonably apparent.

V. The defendant asked nine instructions, all of which were refused by the court. The first was as follows : " If

3. INSTRUC- a person is assaulted in such a violent man-
TIONS: error
without preju-ner as that retreat would endanger the safety
dice. of the person so assaulted, the assailed party

need not retreat to the wall before he makes resistance."
The seventeenth instruction given was as follows: "A
man may lawfully repel force by force, in defense of his
person, and is not obliged always to retreat before using
such force but may, if necessary and under justifiable cir-
cumstances, in order to protect his own life or person, even
pursue his adversary until he has secured himself from all
danger, and if in so doing he kill his adversary it will be
justifiable." * * * This embodies all that was asked
by the defendant, and more. Surely the defendant can-
not complain that his first instruction was refused when
the court gave the seventeenth. The same idea is also
embraced in the sixteenth instruction given; and it is
there said that "the assaulted party will not be bound, as
the law terms it, "to 'retreat to the wall' before he
makes resistance or defense of his person."

Without copying more at length we remark that the
second, fifth and sixth instructions asked and refused are
fairly embraced in the sixteenth given by the court. The
third refused is embraced almost literally in the seven-
teenth as given.

The eighth instruction refused was as follows: "If the
jury believe from the evidence that the deceased and
defendant engaged in a personal combat, and
that the death of Watts was the result of such
combat, then the defendant is not guilty of
the offense charged in the indictment, unless he sought
such combat or conflict with the intent to kill said Watts;
and if said Watts commenced the conflict and the defend-
ant only acted in self-defense, then he is not guilty of
manslaughter and must be acquitted." This instruction
embraces two distinct propositions, the last of which would
be good law, doubtless, even without the limitation that
the deceased commenced the conflict. But the whole
instruction as asked surely cannot be the law. In the
first place, an intent to kill is not necessary to constitute

*4. CRIMINAL LAW: murder in second degree: intent to kill.*

murder in the second degree. *The State* v. *Decklotts*, 19 Iowa, 447.. And, in the second place, a man may not kill another, even in a combat, unless such killing shall be necessary for his self-defense. If there was no necessity, either real or apparent, for the killing, he may be guilty of murder in the second degree, although he entered the combat without the intent to kill. This would be true beyond question, if there was undue advantage and the use, by the slayer, of a deadly weapon.

VI. There was evidence tending to show that the deceased was not well cared for or nursed after he was 5. —— neglect of wounded; and that by the use of intoxicating wounds : rea- sonable doubt: liquors and other causes his chances for recov- onus. ery were materially lessened. Having reference to this testimony, the defendant asked instructions four, seven and nine which were refused. These instructions, in as many forms, asked the court, substantially, to instruct the jury that if they had a reasonable doubt that the death of Watts was strictly and clearly traceable to the wounds and not dependent on any other cause, they should acquit. The court not only refused these but gave the following: " 21. If you find from the evidence that the defendant inflicted the wounds upon the person of Watts, as charged in the indictment, if such wound or wounds so inflicted by the defendant caused or contributed to the death of said Watts, then the prisoner cannot be excused because other causes may have also contributed to his death. If death ensues from a wound given in malice, but not in its nature mortal, but which being neglected or mismanaged, the party dies, this will not excuse the prisoner who gave it; but he will be held guilty of the murder, unless he can make it clearly and certainly appear that the maltreatment of the wound, or the medicine administered to the patient, or his own misconduct, and not the wound itself, was the sole cause of his death."

The last sentence of this instruction from the words " if

death ensues," is a literal extract from Greenleaf on Evidence (see vol. 3, § 139). The same, in substance, may also be found in 1 Russ. on Crime (ed. of 1841), 428; id. (4th Am. ed.) 428, 429; id. (7th Am. ed.) 505; Roscoe's Cr. Ev. (3d ed.) 703, 706; 1 Hale's P. C. 428. And the doctrine embodied in the extract was carefully considered and thoroughly examined and approved by the supreme court of Massachusetts in *Commonwealth* v. *Hackett,* 2 Allen, 136, in an opinion by BIGELOW, Ch. J. The cases were referred to and stated, and it was said in the opinion that " we find the authorities to be clear and uniform, from the earliest to the latest decisions. * * * * It is certain that the rule of law, as stated in the authorities, has its foundation in a wise and sound policy. A different doctrine would tend to give immunity to crime and to take away from human life a salutary and essential safeguard. Amid the conflicting theories of medical men, and the uncertainties attendant upon the treatment of bodily ailments and injuries, it would be easy in many cases of homicide to raise a doubt as to the immediate cause of death, and thereby to open a wide door by which persons guilty of the highest crime might escape conviction and punishment." The cases cited in the opinion are, *The King* v. *Reading,* 1 Keb. 17; *Row's case,* stated in 1 East's P. C., ch. 5, § 13; *Regina* v. *Holland,* 2 M. & Rob. 351; *Commonwealth* v. *Green,* 1 Ashm. 289; *Regina* v. *Haines,* 2 Car. & Kirw. 368; *State* v. *Baker,* 1 Jones' Law R. (N. C.) 267; *Commonwealth* v. *M'Pike,* 3 Cush. 181. In view of this current and weight of authorities, it is not strange that the court gave the instruction, nor that we should feel constrained to approve it.

But there is one peculiar phrase of the instruction given and in that part copied from 3 Greenl. on Ev., § 139, which we do not find to have a direct and express support in any of the cases examined by us. It is that part which says " unless he can make it clearly and certainly appear," etc.,

whereby the burden of proof is cast upon the defendant. And it is claimed, that under the modern rule the burden of proof is never cast upon the defendant. The case of *Tweedy* v. *The State*, 5 Iowa, 433, and the case of *Commonwealth* v. *McKie*, 1 Gray (Mass.), 61 ; S. C., 1 Lead. Cr. Cases, 347, are cited in support of this so-called modern rule. The general proposition underlying these cases is, that the State has the burden of proof, to show, beyond a reasonable doubt, the guilt of the accused ; hence, any negative matter, such as the absence of self-defense, the want of sufficient provocation, etc., must be shown by the State, and the defendant cannot be held to have the burden of proof cast upon him to show such matters. It is not our purpose to now enter into any discussion of this general question. We only remark that whenever the matter of defense is wholly disconnected from the body of the offense charged, is distinct affirmative matter, the general rule, as above stated, does not properly apply ; but in such cases the burden of proof does rest upon the accused. See *The State* v. *Felter*, 32 Iowa, 49.

Affirmed.