THE STATE OF IOWA, Appellee, v. MATHIAS BALDES, Appellant.

**Murder in second degree:** EVIDENCE. Evidence reviewed and held
1  sufficient to support a conviction of murder in the second degree.

**Same:** INTENT. Where death naturally followed as the result of a
2  violent assault upon one afflicted with heart trouble, which was known to defendant, the law will presume that he intended such result.

**Same.** A specific intent to kill is not essential to murder in the
3  second degree either at common law or under the statute.

**Murder:** INSTRUCTIONS. An instruction that to convict of murder
4  in the first degree the jury must find that the injuries resulting in death must have been inflicted wilfully, deliberately, pre-

meditatedly, with malice aforethought and specific intent to kill; and with respect to the included offense of murder in the second degree, that if defendant unlawfully, feloneously and with malice aforethought did assault, beat and choke deceased thus inflicting the injuries from which she died, but if such acts were not done wilfully, deliberately, premeditatedly and with specific intent to kill a verdict of murder in the second degree should be returned, when construed together, will not authorize a conviction of murder for an accidental killing.

**Same:** ADMONITIONS OF THE COURT. The giving of an admonition that the jury should not permit the magnitude of the punishment for the offense charged to affect their judgment is largely discretionary and is not objectionable, where there is nothing in the language of the court to indicate bias, or that can be construed into an argument against the defendant.

**Murder:** EXCESSIVE SENTENCE. A life sentence for the crime of murder in the second degree is not excessive punishment where there are few palliating circumstances.

*Appeal from Sioux District Court.*— Hon. J. L. KENNEDY, Judge.

TUESDAY, FEBRUARY 5, 1907.

FROM a conviction of murder in the second degree the defendant appeals. The opinion states the essential facts. —*Affirmed.*

*George T. Hatley,* for appellant.

*C. W. Mullan,* Attorney General, and *L. De Graff,* Assistant Attorney General, for the State.

WEAVER, C. J.— The defendant was convicted of the murder of his wife, and sentenced to the penitentiary for life.

I. The first proposition advanced for the reversal of the judgment below is upon the sufficiency of the evidence to sustain a conviction. The evidence tends to show that there was, and for some time had been, a lack of harmony

between the defendant and his wife. He is evidently a man of violent if not brutal temper, and we may draw the inference that she, at times at least, was not careful to avoid exciting his anger. On the day of the alleged murder they had an angry passage of words over a trifling matter soon after which the wife left the house, going to a straw pile in the barn yard for the purpose of filling a straw "tick," or mattress, where she was soon followed by the defendant. Of what first took place on defendant's arrival at the straw pile, there is no living witness but himself. A son of the parties, a boy of fourteen years, saw them go in that direction and soon afterward, hearing the sound of a quarrel or wrangle of some kind, he looked up and saw the defendant with his hands upon his wife, pushing her about. The witness called his older sister and they both ran to the barnyard. Defendant still held the deceased in his clench pushing her around. The children armed with hoe and pitchfork sought to interfere in defense of their mother, but were driven back by their father who then renewed the assault upon the deceased, throwing her down, in which position he continued to maltreat her. In the words of one of the children " he was on his right leg or knee on the straw with his left knee on mother's stomach with his hands on mother's breast and neck pushing up and down." When he released her, the deceased arose and walked in a stooped or crippled manner in the direction of the house to an upturned wagon box on which she sat down. Here the defendant again approached her and seized her by the neck and breast and forced her backward on the box. He was not seen to kick or strike her. She again rose and started for the house when defendant took her by the arm and according to the children " kind of dragged her along." After they had disappeared together in the house, the boy says he looked through the window and saw his mother sitting in a bent position his father holding her with

*1. MURDER IN SECOND DEGREE: evidence.*

one hand and brandishing a butcher knife with the other. In this he is also corroborated by his sister. At this juncture the boy procured an ax and going to the kitchen door threw it at his father, hitting him upon the shoulder. Thereupon defendant released the deceased and turned in pursuit of the boy, and about the same time deceased arose and had reached the door of the sitting room when she was seen to fall in an apparent faint. Defendant at once returned and with the children carried the deceased to the porch and tried to revive her, but without success. She seems to have been dead from the time of her fall in the door. Going to town defendant reported that his wife had died of heart disease. The undertaker in preparing the body for burial found bruises or discolorations indicating physical injury upon the woman's arms, shoulders, and back, also upon her leg and groin, though none of apparently extreme gravity. A somewhat superficial autopsy disclosed nothing abnormal except a congestion of the pancreas and of the areolar tissue below the diaphragm and across the stomach and over the aorta. It was the opinion of at least some of the physicians that the injuries indicated by these various marks contributed to the woman's death. One physician who assisted at the examination testifies that, in his opinion, the injury to the areolar tissue was caused by external violence, and that the shock might have caused death. As a witness in his own behalf defendant admits the truth of much of the story told by the children, but claims that deceased was the aggressor in the struggle at the straw pile, and denies that he choked her, or put his knee upon her, or otherwise severely injured her. He concedes that he followed her to the wagon box, and, being provoked by the epithets she applied to him, he seized and pushed her over, holding her there about half a minute. According to his story when he followed her into the house she armed herself with a butcher knife and threatened to disembowel him, at which threat he caught hold of her and wrenched the knife from her hand. It was

at this juncture, he claims, that the boy and girl arrived and discovered him in possession of the weapon. He swears · that for ten years deceased had been complaining of heart trouble, and it is the theory of the defense that her death is attributable to a sudden attack of that nature. Defendant is a man of fifty-two years of age weighing one hundred and ninety-five pounds. His wife at the time of her death was forty-seven years old. She weighed about one hundred and seventy-five pounds, and, originally at least, was a strong and robust woman. The parties had been married about twenty-five years, during which time deceased had borne to the defendant thirteen children, of which eight survived. In addition to the labors of the household, she had also assisted her husband in the field, and, though still in middle life, it is perhaps not strange that those twenty-five years of childbearing and grinding toil had left her with a weakened heart and lessened vitality. We are certainly not prepared to hold upon such a showing that the verdict of guilty of murder is without support.

Even accepting the defendant's theory that the woman was afflicted with heart disease, yet, if his own brutal and inexcusable violence aggravated the diseased condition of his

2. SAME: victim or united therewith to cause her death
intent. sooner than it would have otherwise occurred, he cannot escape criminal responsibility for his act. According to his own statement he knew her to be suffering from heart disease, and she had frequently complained of it to him, and, if in that condition death naturally followed as a result of a violent assault upon her by him, the law will presume that such was his intent. But, even if we discard the suggestion of heart disease, we think the testimony affords ample justification for the verdict returned. It is unnecessary to further discuss it. It speaks for itself.

It may be, and probably is true that in entering the quarrel which ended in such tragic manner, defendant had no conscious purpose to kill his wife, but " specific intent

to kill is not essential at common law to constitute murder,
nor is it essential under our statute to con-
stitute murder, in the second degree." *State*

3. SAME.

*v. Decklotts,* 19 Iowa, 451.

II.  Exception is taken to several paragraphs of the
court's charge to the jury.  It is said by counsel the jury
were instructed that, if the injuries upon the body of de-
ceased were "not willfully, deliberately, and
premeditatedly inflicted defendant was guilty
of murder in the second degree" and, upon this interpre-
tation of the instruction, it is argued that for even a
purely accidental killing, a person could be held guilty of
murder.  But this involves a palpable misconstruction if
not distortion of the trial court's language.  The court, hav-
ing first correctly defined murder in the first degree, told
the jury that, in order to convict of that degree, it must be
found that the death of the deceased resulted from injuries
inflicted by defendant "willfully, deliberately, premeditat-
edly, and with malice aforethought, and with the specific
intent to kill."  Passing then to the next offense included
in the charge, the jury was told that if the defendant "un-
lawfully, feloniously, and with malice aforethought" did
assault, beat, and choke the deceased, thus inflicting injuries
from which she died, but that such acts were "not done
willfully, deliberately, premeditatedly, and with specific in-
tent to kill, then a verdict of murder in the second degree
should be returned.  When the paragraph is read as a
whole, it is apparent there was no error.  An unlawful kill-
ing with malice, express or implied, is murder in the second
degree, even though unaccompanied by deliberation, pre-
meditation, or specific intent to kill.  State v. Decklotts,
*supra;* 4 Blackstone's Commentaries, 195; *State v. Gilman,*
69 Me. 163 (31 Am. Rep. 257); *State v. Moore,* 25 Iowa,
128; *State v. Morphy,* 33 Iowa, 270; *State v. Mewherter,*
46 Iowa, 88; *State v. Leeper,* 70 Iowa, 748; *State v. Keas-
ling,* 74 Iowa, 528.  If the killing be shown not only to

4. MURDER: in-
  structions.

have been done in malice, but with deliberation, premeditation, and the specific intent to kill, then, under our statute it is murder in the first degree. Code, section 4728. The instructions criticised by counsel do no more than state these well-established propositions of law.

In concluding its charge the trial court advised the jurors, among other things, that the gravity or magnitude of the punishment prescribed by law for the offense charged should not be allowed to affect their judgment or to determine their verdict. This instruction, it is objected, was an indirect argument against defendant, and indicated that, in the opinion of the court, the defendant should be found guilty. Admonitions of this character are not infrequent. Whether anything occurring upon the trial or in the arguments of counsel calls for the giving of such cautionary instructions is a matter appealing to the discretion of the trial court, and there is nothing in the record showing that such discretion was here abused. There is nothing whatever in the language employed which can fairly be construed as an argument against the defendant or as indicating bias on part of the court. We find no error in the instruction.

5. Same: admonitions of the court.

III. It is finally urged upon us that the punishment is excessive. Assuming as we must that appellant is guilty of murder, we cannot say that the court should not have sentenced him to life imprisonment. It is one of those cases on which very little can be said in palliation of the crime, and the judgment of the district court must be *affirmed*.

6. Murder: excessive sentence.