STATE OF IOWA, Appellee, v. WALTER JOHNSON, Appellant.

No. 39365.

JANUARY 20, 1931.

*Tinley & Tinley* and *Robertson & Robertson,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *Frank E. Northrop,* County Attorney, for appellee.

STEVENS, J.—I. The indictment charges the defendant with the crime of murder in the first degree. The evidence shows that, sometime after 9:30 o'clock on the evening of December 23, 1927, the defendant shot and killed his wife, and immediately thereafter shot himself, inflicting a serious wound in his right chest.

At the close of the evidence, the defendant moved the court to withdraw the charge of murder in the first degree, upon the ground that the evidence was insufficient to convict the defendant thereof. The motion was overruled, and of this ruling the defendant now complains. The evidence fully justified the submission of this charge to the jury. We shall not review it in detail, as the defendant was acquitted of this charge. One of the claims asserted by the defendant was that he was in such a state of intoxication that he was unable to form an intent, and therefore could not have been guilty of murder in the first degree. This issue was submitted to the jury. So far as the evidence shows, there was no immediate provocation prompting the act. Both the defendant and the deceased were addicted more or less to the use of intoxicating liquor. The defendant admitted that he occasionally drank to excess. The evidence also shows that several bottles of home brew were consumed by the defendant and the deceased on the night in question, together with some whisky. There is evidence tending to show that the relations of the defendant and deceased were somewhat strained, and that he might have been jealous of attentions which he appeared to think were shown to her by other men.

As stated, the deed was accomplished by the use of a deadly weapon, and in this connection we may as well dispose of the further contention of the defendant that the court committed  error in failing to give the jury an instruction on the law of self-defense. No such instruction was requested, and no evidence tending to show that the act was done in self-defense appears in the record. The court properly overruled the motion to withdraw the charge of murder in the first degree from the jury, and there was no evidence that defendant acted in self-defense.

II. The shooting occurred at the home of the defendant. The deceased was found lying dead on the front porch, and the

defendant in the yard, some distance away, where he had fallen after inflicting the wound upon himself. As stated, there was evidence that both the defendant and the deceased had been drinking, and also that the defendant was, to some extent, under the influence of liquor.

Dr. Brown, a witness for the State, arrived on the scene a very few minutes after the crime was committed. The defendant was immediately thereafter removed to a hospital. Dr.  Brown testified that he smelled the odor of liquor on the defendant's breath; that he was apparently, to some extent, intoxicated, but that it was hard to determine the relative effect of the liquor and of the shock resulting from the self-inflicted wound. On cross-examination, the witness gave it as his opinion that the defendant was drunk; that he was more or less rambling in his conversation. The witness was then asked by counsel for the defendant, on cross-examination, as to whether or not, from what he saw, the defendant was in a mental condition at the time to determine what he was doing or saying 20 minutes before the accident took place. An objection to this question was sustained. Counsel then inquired of the witness "whether, at the time he first saw the defendant in the hospital, what he would say as to whether or not he was in a mental condition 20 minutes before that time to have contemplated the act he was charged with committing." Objection was also sustained to this question.

A third question, substantially, in form and substance, like the preceding questions, was propounded to the witness, and again the court sustained the objections of the State thereto. It is apparent that some of the questions called for the ultimate conclusion of the witness on the facts, and sought to invade the province of the jury. This was improper, and, in so far as the questions were so framed as to call for the conclusion of the witness, the objections were properly sustained. *State v. Steffen*, 210 Iowa 196. The form of each of the questions was objectionable. The foundation assumed therefor was not justified by the evidence. The observation by the witness of the defendant was 20 or 30 minutes after the shooting, and after sufficient time had elapsed so that he must have realized the serious character of his act. He was suffering both from

shock and the effects of liquor. We think the objections to the questions as put to the witness were properly sustained.

III. Numerous instructions were requested by the defendant, and many exceptions were taken to the instructions given by the court on its own motion. None of the requested instructions were given as presented by the defendant.  Before discussing the instructions generally, we shall .dispose of the exceptions lodged against Paragraph 37. The court in this instruction told the jury that:

"So far as the defendant relies on good character or upon a peaceable disposition to disprove the charges made by the State herein, the burden is upon the defendant to establish such good character or peaceable disposition."

The burden of establishing the defendant's guilt beyond all reasonable doubt is always upon the State. As to certain matters, however, such as drunkenness, alibi, and insanity, which we have held are defensive in character, the burden is upon the defendant to establish the same by a preponderance of the testimony. *State v. Harrison*, 167 Iowa 334; *State v. Patton*, 206 Iowa 1347; *State v. Buck*, 205 Iowa 1028.

An instruction was requested by the defendant as to the effect to be given. by the jury to the evidence introduced by the appellant to prove his general reputation as to a quiet, peaceable disposition, and as to good character. The court declined to give the requested instruction, but gave two instructions designed to fully cover the subject. In these instructions the court, however, failed to refer in each instance to both reputation as to disposition and also as to character. Perhaps the omission did not necessarily mislead the jury, but it would have been better if the instructions had in each instance referred to both. The court instructed the jury that, if the evidence of good character,—omitting any reference to the evidence as to a peaceable disposition,—was sufficient to generate a reasonable doubt of the defendant's guilt, it was their duty to acquit. In so far as the requested instruction and the instructions given by the court told the jury that evidence of good reputation as to peaceable disposition and good character may be sufficient to generate a doubt and permit an acquittal, they were correct.

*State v. Reynard,* 205 Iowa 220; *State v. Schumacher,* 195 Iowa 276; *State v. King,* 122 Iowa 1; *State v. Abarr,* 39 Iowa 185. Evidence of general reputation of a quiet, peaceable disposition and of good character is not defensive in character, like self-defense and alibi. The court so instructed the jury in this case.

It has never been the rule in this state, and, so far as we are advised, is the rule in no other jurisdiction, that, when testimony is introduced by the defendant for the purpose of showing that he possesses a good reputation as a quiet, peaceable person, and one of good character, the burden of proof is upon him to establish such reputation. Clearly, no burden rested upon the defendant at this point. Neither a good reputation as to the particular trait involved nor of good character constitutes a defense to a criminal charge. Evidence of this character is admissible upon the theory that a person thus possessed is less likely to commit crime. Good character is in such cases an asset of very great value, and goes directly to the issue of the defendant's guilt or innocence. Such evidence may be sufficient to generate a doubt in the minds of the jury and entitle the defendant to an acquittal. The court in its instructions so advised the jury. This portion of Paragraph 16, which is quoted above, is clearly erroneous, and should not have been given. The court cannot say that it was without prejudice.

IV. The defendant requested the court to instruct the jury as to the legal effect to be given the testimony of certain declarations and admissions by the defendant. The requested instruction was, in substance, the cautionary one frequently given as to the weight and consideration the jury shall give to statements, declarations, or admissions of a party. The court refused to give the requested instruction, and none was given covering the subject. We deem it unnecessary to incorporate the statements of the witness in the opinion; but, after careful consideration of the record, a majority of the court is of the opinion that the requested instruction should have been given, and that the refusal of the court to give same should not be held to have been without prejudice.

V. Numerous exceptions taken to the court's instructions are based upon the contention that the court failed to properly and accurately instruct the jury as to the proper distinctions

 between the two degrees of murder and manslaughter. Murder, as defined in Section 12910 of the Code, 1927, is the killing of a human being with malice aforethought, either express or implied. All murder perpetrated by means of poison, lying in wait, or any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate certain designated crimes, is murder in the first degree. Section 12911. Murder committed otherwise than as set forth in Section 12911 is murder in the second degree. The crime of manslaughter is not specifically defined by the statute. The unlawful killing of a human being, with malice, express or implied, is murder in the second degree, although unaccompanied by deliberation, premeditation, or a specific intent to kill. *State v. Morphy*, 33 Iowa 270, 276; *State v. Spangler*, 40 Iowa 365; *State v. Baldes*, 133 Iowa 158; *State v. Burris*, 198 Iowa 1156. A homicide committed otherwise than willfully, deliberately, or with premeditation may be manslaughter or murder in the second degree, according to the absence or presence of malice. *State v. Spangler*, supra. A homicide committed in a sudden passion or heat of blood, without deliberation or malice, is manslaughter, and not murder in the second degree. *State. v. Spangler*, supra. The distinction between murder and manslaughter is that in manslaughter there is the absence of malice, whereas malice aforethought is an essential element of murder. *State v. Brown*, 152 Iowa 427. A specific intention to kill or to take life is not necessary to constitute murder in the second degree, but is indispensable to the crime of murder in the first degree. *State v. Decklotts*, 19 Iowa 447; *State v. Phillips*, 118 Iowa 660; *State v. Windahl*, 95 Iowa 470; *State v. O'Donnell*, 176 Iowa 337.

The distinction between the respective degrees of murder and the crime of manslaughter have been so often stated and pointed out in the decisions of this court that elaboration thereof is wholly unnecessary. The trial court with more or less accuracy defined the degrees of murder and the crime of manslaughter, and pointed out the distinction therein.

The defendant, as stated, however, complains because, as asserted by him, the definitions were inaccurate, incomplete, and, as a whole, conflicting and inconsistent. The court in Paragraph

16 of its charge gave the distinction between the degrees of murder. This portion of the instruction was followed with the further statement that:

"If the intention to take life is formed on a sudden impulse, and is executed at once and without deliberation or premeditation, the crime is not greater than murder in the second degree."

The court in a later instruction defined the crime of manslaughter as the unlawful killing of a human being without malice. After thus defining manslaughter, the court in the same instruction said:

"It may be voluntary, as where the killing is done intentionally, but in the heat of sudden passion, occasioned by some great provocation, which the law, in its tenderness for the frailties of human nature, regards as sufficient to palliate or mitigate the offense, but not sufficient to justify or excuse it."

Following the instructions referred to, and in the course of the charge to the jury, the court defined murder in the second degree. It is also contended by appellant that the definitions thus given are inaccurate, and fail to point out clearly and understandingly the distinction between murder in the second degree and manslaughter; that, in reality, the crime defined by the instructions is manslaughter, and not murder in the second degree. Perhaps the instructions are somewhat subject to the criticisms lodged against them, but they are not necessarily erroneous. We do not deem it necessary to set them out or to discuss them in detail. If the distinctions between the two degrees of murder and the crime of manslaughter heretofore pointed out in many decisions of this court are carefully observed, there need be no difficulty in making them clear, explicit, and easy to be understood by the jury. If the intention to take life is formed on a sudden impulse, and immediately executed without deliberation, premeditation, or malice, the crime is not greater than manslaughter. The quotation from Paragraph 16 of the court's instruction set out above was not designed by the court to constitute an accurate definition of either murder in the second degree or manslaughter, nor to differentiate between the two offenses. The statement was prefatory only to what was to follow. The thought obviously in the mind of the court

was that, under certain circumstances, where sudden provocation was present, the crime might be murder in the second degree, or manslaughter. The mere presence of passion or heat of blood will not, of itself, reduce the crime to manslaughter (*State v. Hunter*, 118 Iowa 686) ; nor is the intent to kill necessarily inconsistent with manslaughter or murder in the second degree. *State v. O'Donnell*, supra.

The definition subsequently given was intended to make clear the prefatory statement. If discrepancy or inconsistency resulted, it was because the prefatory statement was not more definite and accurate. We doubt if there was such conflict in the statement referred to and the subsequent definitions given to the jury as to have caused prejudice to the defendant. Perfection in the art of instructing juries is seldom possible. There should, however, so far as possible, be the greatest attainable accuracy and precision in the definition of the degrees of crime and of separate offenses. The administration of the criminal law is difficult enough, at best.

VI. Testifying in his own behalf, the defendant claimed that he was so intoxicated at the time of the homicide as to be wholly incapable of forming any intent to commit a crime. He  testified that he procured whisky during the afternoon of the 23d, and that both he and the deceased imbibed freely of home brew, which they kept on hand. He testified that he remembered nothing of the homicide, and did not claim that his act was the result of sudden provocation; that the defendant and the deceased had more or less of marital difficulties, and drank and quarreled, to considerable extent, together. Little testimony except his own and that of Dr. Brown was introduced, to show the degree of the defendant's intoxication. Two of his stepchildren testified as to some of the occurrences. Four shots in all were fired. Two, and possibly three, bullets entered the body of the deceased, and one, the body of the defendant. No weapon except that with which the defendant committed the homicide was found on or about the premises. All of the shots were fired so close to the deceased that the skin was powder-burned. The defendant was not intoxicated at 3 o'clock in the afternoon, nor was he much later in the evening, if at all. Instructions requested by the defend-

ant as to the effect of intoxication as a defense were properly refused. Each paragraph thereof gave too great emphasis to the ability of the defendant to know or determine right from wrong. Partial drunkenness does not make impossible the formation of a criminal intent. To operate as a defense, the intoxication must be so great that the defendant is unable to form a specific intent. *State v. Patton,* 206 Iowa 1347, 1348, and cases there cited. The instructions given by the court, of which the defendant complains, in effect so advised the jury. The defense of drunkenness is available to the defendant only when the degree of intoxication is so great as to deprive him of the power to form a specific intent. Where this is true, it is available in all cases where the formation of a specific intent to do the act is essential.

The particular complaint of counsel is that the instructions given by the court were not sufficiently comprehensive.

What we have said disposes of most of the numerous propositions relied upon by appellant for reversal. The omission to discuss each assignment separately is not because the same has been overlooked, but for the reason that the discussion already indulged sufficiently covers the points. None of the matters complained of are likely to arise upon a retrial of the case. For the error in the instruction placing the burden upon the defendant to establish his alleged peaceable disposition and good character, the judgment below must be, and it is,—*Reversed.*

All the justices concur, except DE GRAFF, J., who takes no part.