## BULLOCK v. UNITED STATES.
### No. 7634.

United States Court of Appeals for the
District of Columbia.

Argued April 7, 1941.

Decided June 30, 1941.

Eli Grubic and T. Emmett McKenzie,
both of Washington, D. C., for appellant.

Dennis McCarthy, of Washington, D. C.
(E. M. Curran, Charles Murray, and Ar-
thur McLaughlin, all of Washington, D. C.,
on the brief), for appellee.

Before GRONER, Chief Justice, and
VINSON and EDGERTON, Associate
Justices.

EDGERTON, Associate Justice.

This appeal is from a conviction
of murder in the first degree. The trial
judge instructed the jury that, though "de-
liberate and premeditated malice"[1] involves
turning over in the mind an intention to
kill, "it does not take any appreciable
length of time to turn a thought of that
kind over in your mind." In 1931, this
court said as much.[2] But in 1937 we ap-
proved the opposite rule, that "some ap-
preciable time must elapse."[3] We adhere
to the latter rule. To speak of premedita-
tion and deliberation which are instantane-
ous, or which take no appreciable time, is a

---

[1] D.C.Code, Tit. 6, § 21.

[2] "Deliberation and premeditation may
be instantaneous." Aldridge v. United
States, 60 App.D.C. 45, 46, 47 F.2d 407,
408, reversed on other grounds, 283 U.
S. 308, 51 S.Ct. 470, 75 L.Ed. 1054, 73
A.L.R. 1203. The point was not in-
volved in the case, since the jury were
charged that "there must be an appre-
ciable time * * *."

[3] Bostic v. United States, 68 App.D.C.
167, 170, 171, 94 F.2d 636, 639, 640, cer-
tiorari denied, 303 U.S. 635, 58 S.Ct. 523,
82 L.Ed. 1095; People v. Guadagnino,
233 N.Y. 344, 135 N.E. 594, 597; State

v. Arata, 56 Wash. 185, 105 P. 227, 21
Ann.Cas. 242. Contra, People v. Don-
nelly, 190 Cal. 57, 210 P. 523; State v.
Russo, 1 Boyce, Del., 538, 77 A. 743;
State v. Daniel, 139 N.C. 549, 51 S.E.
858; Commonwealth v. Daynarowicz, 275
Pa. 235, 119 A. 77; Perugi v. State, 104
Wis. 230, 80 N.W. 593, 76 Am.St.Rep.
865.

Statements like that in the Bostic case,
68 App.D.C. 167, 169, 94 F.2d 636, 638,
that "no particular length of time is nec-
essary for deliberation," are consistent
with the rule that some appreciable length
of time is necessary.

contradiction in terms. It deprives the statutory requirement of all meaning and destroys the statutory distinction between first and second degree murder. At common law there were no degrees of murder. If the accused had no overwhelming provocation to kill, he was equally guilty whether he carried out his murderous intent at once or after mature reflection. Statutes like ours, which distinguish deliberate and premeditated murder from other murder, reflect a belief that one who meditates an intent to kill and then deliberately executes it is more dangerous, more culpable or less capable of reformation than one who kills on sudden impulse; or that the prospect of the death penalty is more likely to deter men from deliberate than from impulsive murder. The deliberate killer is guilty of first degree murder; the impulsive killer is not. The quoted part of the charge was therefore erroneous. The majority of the court think, however, that it was sufficiently corrected by a later charge which in effect contradicted it.[4]

■ But we all think the evidence insufficient to show that the killing was deliberate and premeditated. When the victim, a police officer, came on the scene, appellant was engaged in a drunken quarrel with another person and had a loaded revolver in his hand. There is no sufficient evidence that appellant was facing in the officer's direction, or knew of his presence, until he spoke. The officer asked "What's the trouble around here?" or "What's all this racket about?" The prosecutor, in his opening statement to the jury, conceded that "as soon as the officer spoke, defendant shot him." Shortly before the close of the trial the court said: "The way it impresses me from the evidence is that the officer was right on top of them, and almost momentarily the man pulled the revolver and shot him." In denying a mo-

tion for a new trial the court said: "My view is that the defendant did not realize a police officer was nearby until the officer called out the question 'What's the trouble around here?' and that it was a matter only of a second or two before the defendant fired the two shots in rapid succession which resulted in the death of the police officer." The evidence overwhelmingly supports these statements of the prosecutor and the judge. Accordingly it does not support a conviction of first degree murder. There is nothing deliberate and premeditated about a killing which is done within a second or two after the accused first thinks of doing it; or, as we think the evidence shows, instantaneously, as appellant, interrupted in his quarrel, turned and fired. Appellant's motion for a directed verdict in respect to first degree murder should have been granted.

After the killing, appellant escaped. He was indicted in 1932, when the crime was committed, but was not arrested until 1939. On April 29, 1939, District police officers brought him from New Jersey to the District and took him to police headquarters. They arrived about 6:30 p. m. About 10 p. m., they took him to a police station for the night. From 1 p. m. to 2 p. m., on April 30, he was in the homicide squad room at headquarters. He was then taken to Northeast Washington to search for the gun. About 7:30 p. m. he was brought back to headquarters. During the afternoon policemen questioned him at length. One of them testified: "We would ask him, and then asked him over again, and over and over and over several times. We questioned him along the line." According to the officers, he made oral confessions. An alleged written confession, which defendant signed, was typed by a police officer, beginning about 8 p. m. and ending about midnight on April 30. This alleged confession was read to the jury, with an in-

---

[4] "Deliberation is the turning over in one's mind of a thought or intention, a consideration and reflection upon the intention or design. Now, that means, in short, that if a party forms a purpose to kill and immediately kills the party whom he purposes to kill, without giving it any thought whatever or turning it over in his mind after he has conceived the thought, he is not guilty of first degree murder. If he purposes to kill him, turns it over in his mind, gives it what you might call a second thought—he might consider the consequences, he might consider whether he should do it or not—if he gives it any consideration by way of turning that thought over in his mind, then that is the element of deliberation. Sometimes it might take some time to deliberate; other times, you would deliberate rapidly. The turning over in one's mind might be rapid in a given case, and might be slow; but in every case of first degree murder you must have both a purpose to kill and, after that purpose and intent is formed, you must have a turning over of it in your mind to some extent, even though it might be brief."

struction to disregard it unless they found, beyond a reasonable doubt, that it was not obtained by force, threats, or promises.

Appellant is an illiterate Negro. He testified that policemen kicked and beat him to compel him to sign the confession; that this made him dizzy and almost blind; that he thought they would kill him if he did not sign; and that the jail physician gave him salve and bandage for his injuries, and tablets for the pain in his head. Appellant's account included circumstantial details such as bleeding from the nose and mouth, and washing away the blood over a sink at headquarters. He testified that he was well treated after he was transferred to the jail. The jail physician testified that on May 2 he gave defendant ointment, gauze, and adhesive for wounds caused by an "abrasive influence," and that either on that day or the next he "gave sedative drugs to alleviate defendant's severe headache." The police denied all violence.

By the Fifth Amendment, "No person * * * shall be compelled in any criminal case to be a witness against himself." This forbids the use of extorted confessions.[5] The Code of Criminal Procedure requires an arresting officer "to take the defendant before the nearest United States commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial."[6] This duty must be discharged without unnecessary delay.[7] Appellant's detention for more than 36 hours without hearing or commitment, which would ordinarily have been unlawful, was perhaps excused by the fact that it occurred on Saturday night and Sunday. The fact that appellant was subjected during his long detention to persistent and repeated questioning,[8] his testimony that the police used violence, the physician's corroborative testimony, and the fact that the murdered man was a policeman, make it appear probable that violence was used. Yet we cannot say that no reasonable man, seeing the witnesses, could find the contrary. Even if there was no violence, it does not follow that the confession was voluntary. In cases decided since appellant's trial, the Supreme Court has condemned the practice of extorting confessions from poor and ignorant men by persistent and repeated questioning, and has ruled that "no such practice * * * shall send any accused to his death."[9] Though the questioning to which the defendant was concededly subjected in this case was less extensive than in the cases just cited, it was obviously improper. Whether it was extensive enough to violate the defendant's constitutional rights we need not decide on this appeal, as we are reversing the conviction on another ground.

Reversed.

[5] Bram v. United States, 168 U.S. 532, 542, 18 S.Ct. 183, 42 L.Ed. 568.

[6] U.S.C.A. Tit. 18, § 595.

[7] Janus v. United States, 9 Cir., 38 F. 2d 431, 438; United States v. Ebbs, D.C. W.D.N.C., 10 F. 369, 375.

[8] Cf. People v. Alex, 265 N.Y. 192, 192 N.E. 289, 94 A.L.R. 1033.

[9] Chambers v. Florida, 309 U.S. 227, 241, 60 S.Ct. 472, 479, 84 L.Ed. 716; White v. Texas, 310 U.S. 530, 533, 60 S.Ct. 1032, 84 L.Ed. 1342.