## FISHER v. UNITED STATES.
### No. 8809.

United States Court of Appeals
District of Columbia.

Argued March 12, 1945.

Decided April 23, 1945.

Mr. Charles H. Houston, of Washington, D. C., for the appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee.

Before MILLER, EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

This is an appeal from a judgment of conviction and death sentence for murder. The principal contention of appellant is that the evidence is not sufficient to justify the jury in finding that the killing was premeditated.

■ There was no witness to the homicide, other than defendant. However, the defendant's own testimony showed that he first struck his victim because she had complained about his work. She then ran to the back of the room where the killing took place while he went to the floor above, got a stick from a fireplace, returned downstairs and killed her. In the killing he used the stick and also choked her. Finally, to insure her death he used a knife. All this showed a persistent purpose in the execution of the crime during an appreciable time. The evidence was sufficient to permit the jury to find deliberation.[1]

■ The second ground of error is the exclusion of an uncommunicated complaint which the defendant's victim had made about his work prior to the offense. The complaint was not a threat; there was no claim of self-defense; it was, therefore, properly excluded.[2]

Expert evidence was introduced by appellant showing that he was a psychopathic personality of the predominantly aggressive type of behavior, and with an apathetic reaction to emotional situations. On the basis of this psychiatric testimony the appellant asked for the following instruction which was denied: "The jury is instructed that in considering the question of intent or lack of intent to kill on the part of the defendant, the question of premeditation or no premeditation, deliberation or no deliberation, whether or not the defendant at the time of the fatal acts was of sound memory and discretion, it should consider the entire personality of the defendant, his mental, nervous, emotional and physical characteristics as developed by the evidence in the case."

■ The instruction confuses the issue of insanity with the question whether the psychopathic characteristics of the appellant prevented him from forming the deliberate intent necessary to constitute first degree murder. For that reason alone it was properly refused. But even if these issues had been separated there was no evidence justifying an instruction on either of them. So far as insanity is concerned there was no testimony indicating appellant did not know the nature and character of his act or was not conscious of the difference between right and wrong. With respect to the issue of deliberation the psychiatric testimony went no further than to say that appellant was the kind of person who was apt to conceive and carry into effect a brutal murder of this character because of his psychiatric aggressive tendencies and his low emotional response to situations which would deter ordinary men. But it is obvious that brutal murders are not committed by normal people. To give an instruction like the above is to tell the jury that they are at liberty to acquit one who commits a brutal crime because he has the abnormal tendencies of persons capable of such crimes.[3]

Modern psychiatry has given us much scientific information which disturbs the former certainty of our judgments of individual responsibility and moral guilt. It has revolutionized the methods of treatment and rehabilitation of prisoners. But the principal place for the application of such a therapeutic point of view where the court exercises discretion in the amount of the sentence and in the treatment of criminals is in our penal institutions. In the determination of guilt age old conceptions of individual moral responsibility cannot be abandoned without creating a laxity of enforcement that undermines the whole administration of criminal law.

---

[1] Bostic v. United States, 1937, 68 App.D.C. 167, 94 F.2d 636, certiorari denied 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095; Bullock v. United States, 1941, 74 App.D.C. 220, 122 F.2d 213, certiorari denied Bullock v. Rives, 317 U.S. 627, 63 S.Ct. 39, 87 L.Ed. 507.

[2] For situations where such communications may be admitted, see I Wigmore, Evidence, 3rd Ed. 1940, § 63.

[3] "The rule suggested by appellant would become a refuge for ill-tempered, irresponsible citizens; it would put a premium upon lack of self-control and would penalize the reasonable man, * * * because of the restraint which he practices in his dealings with his fellows." Hart v. United States, 1942, 76 U.S.App.D.C. 193, 195, 130 F.2d 456, 458.

The court instructed the jury as to the credibility of the witnesses as follows:

"Interest in those things involved within the controversy or its results, friendship or animosity towards persons concerned therein, and many other human factors may or may not affect the desire and capacity of a witness to tell the truth, depending largely upon his innate character. Give to the testimony of each witness only that weight to which, in your good judgment, it is entitled when tested by all those considerations, and in the light of all the other evidence in the case.

"Manifestly, the defendant has a vital interest in the outcome of the case, and in considering his testimony in testing its truth, in weighing its force, you may do so in the light of that interest as well as in the light which may be shed by all the other evidence in the case."

The appellant's objection to the last portion of the above instruction is without merit.[4]

Affirmed.

---

[4] Bishop v. United States, 1939, 71 App.D.C. 132, 138, 107 F.2d 297; Reagan v. United States, 1895, 157 U.S. 301, 305, 15 S.Ct. 610, 39 L.Ed. 709.