## WEAKLEY v. UNITED STATES.
### No. 10975.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 7, 1951.

Decided May 8, 1952.

On Rehearing Aug. 21, 1952.

Clark, Circuit Judge, dissented on rehearing.

James J. Laughlin, Washington, D. C., with whom Albert J. Ahern, Jr., Washington, D. C., was on the brief, for appellant.

Joseph A. Sommer, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty. at the time the brief was filed, and Joseph M. Howard, Asst. U. S. Atty., Washington. D. C., were on the brief, for appellee. Charles M. Irelan, U. S. Atty. at the time of argument, Washington, D. C., also entered an appearance for appellee.

Before CLARK, PROCTOR, and FAHY, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a conviction of murder in the first degree. Appellant had been employed by a local branch of a food distributing concern, and had been discharged from employment. Decedent was local manager of the firm and was shot by appellant during the course of an interview which took place in decedent's office on the morning following appellant's discharge.

Appellant contends that the evidence adduced at the trial was not sufficient to support a verdict of guilty and that the failure of police to preserve a knife found on the person of decedent deprived appellant of a fair trial. In addition, he contends that the court failed to instruct the jury adequately concerning the requirement that there be a

lapse of "an appreciable length of time" between formation of the intent to kill and the act of killing.

As to the first contention, there is evidence of disagreement between appellant and decedent culminating in appellant's discharge. The day after his discharge appellant armed himself, sought out Carnes, and obtained a private interview in Carnes' office. Appellant claims that a dispute ensued and that he did not fire until Carnes seized him and loudly threatened him with harm. However, persons in the vicinity of the cubicle which served as Carnes' office testified that they heard no sound of argument, even though the opaque glass partitions defining the office did not extend to the ceiling and even though Carnes had a "heavy, frog-like voice", nor did they hear sounds of a scuffle. Appellant fired several times, and according to expert testimony the shots were fired from a distance in excess of four feet. One shot struck decedent in the chest, and two struck him in the back of his head after he had fallen. In such a state of the evidence, the court properly denied the motion for directed verdict,[1] and the evidence is adequate to support the verdict which was returned.

With great care, the court instructed the jury concerning the concept of reasonable doubt and the rule that a verdict of not guilty must follow upon any reasonable doubt or any reasonable hypothesis upon the whole evidence consistent with the innocence of the appellant, and the jury could well have reached the decision it did. Where a jury has been properly instructed and the evidence is such that it supports the verdict reached, this court will not usurp the function of the jury in deciding guilt or innocence.

In his account of events which transpired in the room with Carnes, appellant stated that Carnes "went for his pocket" and that there was a "long black knife" on the desk. No such "long black knife" was found at the scene, and the only knife which police did find was described by witnesses as a small, ornamental, pearl-handled knife, of the watch chain type, which decedent had in his pocket. Police considered this knife harmless, and of no significance in the case. They permitted it to remain with decedent's personal effects at the hospital and it was subsequently disposed of to decedent's widow. When the United States Attorney's office learned of the knife, diligent efforts were made to retrieve it so that it might be available at trial, but the knife had been lost. At the trial, in the absence of the knife itself, there was careful and satisfactory testimonial evidence concerning its size and condition, and there was no prejudice to appellant.

Appellant contends that the police were guilty of gross negligence or wilful misconduct in their failure to preserve the knife, but with that we cannot agree. At most the police committed an error of judgment within a field in which they are constantly called upon to make decisions. Police officers must be extremely careful when investigating homicides to preserve any objects or information which might shed light on the matter investigated, and certainly error, if any, would far better be on the side of caution. However, we repeat that there was no prejudice to appellant since adequate testimony was adduced at trial concerning the knife.

We come now to appellant's principal claim of error. He contends that the court did not adequately instruct the jury on the elements of premeditation and deliberation since he did not expressly charge the jury that "an appreciable length of time" must elapse between formation of the intent to kill and the act of killing.

On his first instruction of the jury, and on his later instruction to clarify the distinction between first- and second-degree murder, the court stated that premeditation and deliberation involved a "turning over in the mind of the defendant a conceived plan or design whereby he is going to take human life". If any cautionary treatment of the words premeditation and deliberation were needed, the descriptive phrase "turning over in the mind" served adequately to

---

1. Curley v. U. S., 1947, 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.

direct the jury's attention to the requirement which they impose that there be a lapse of "some appreciable time" between the formation of intent and the act of killing.

■■■ Whether or not reflection and consideration amounting to the deliberation required for first-degree murder actually occurred must be determined by the jury, properly instructed by the court, from the circumstances preceding and surrounding the killing. But it is not a question of how long an accused may have deliberated before his act, for the authorities are agreed that no particular length of time is necessary.[2]

Other contentions of appellant not expressly commented on here have been carefully considered and are without merit. In addition, since this is a capital case, we have examined the entire record in search of any errors which counsel might not have called to our attention, but we have found none.

The judgment of the District Court is Affirmed.

FAHY, Circuit Judge (dissenting).

Convinced that the court erred in instructing the jury on the difference between first and second degree murder and in defining the latter, I think a new trial is required. I agree with the disposition made of the other questions presented.

The trial court charged the jury at one point as follows:

"In order to constitute murder in the first degree there must be a purpose and an intent to kill, coupled with premeditation and deliberation * * *."

This was a correct statement of the law. But the court added:

"Murder in the second degree is an unlawful killing with malice, *but without a purpose or intent to kill* and without premeditation and deliberation." (Emphasis supplied.)

This was in part erroneous, because the homicide might have been second degree murder even though committed with a purpose or intent to kill. It is the absence of deliberation and premeditation, not the absence of purpose or intent, which makes the difference. This error was repeated in the following manner:

"* * * if you believe beyond a reasonable doubt that the defendant purposely killed Thomas Carnes with malice and premeditation and deliberation, your verdict should be guilty as indicted"—

that is, of first degree murder; but the court added:

"If you believe that the defendant killed Carnes with malice, *but without a purpose to do so* and with no deliberation or premeditation, your verdict should be guilty of murder in the second degree." (Emphasis supplied.)

Clearly the jury might have concluded from these instructions that if they found a purpose to kill it amounted to deliberation and premeditation or, in any event, that murder in the first degree had been committed.

True the court made the correct statement:

"Murder in the second degree differs from murder in the first degree in that murder in the second degree *may be* committed without a purpose to kill and without premeditation and deliberation. * * *" (Emphasis supplied.)

But this was immediately explained by a sentence[1] indicating when an intention to kill *may be absent* in second degree murder. This of course did not fill the need for instructing the jury that such an intention *may be present* in second degree murder in circumstances such as disclosed by the evidence in this case.

The matter became of paramount and critical importance by reason of an in-

2. Bostic v. U. S., 1937, 68 App.D.C. 167, 94 F.2d 636 and cases there cited.

1. The sentence referred to reads:
"* * * A killing under the influence of passion induced by an insufficient prov-ocation may be murder in the second degree, or an unintentional killing may be murder in the second degree if it is accompanied by malice."

cident now to be related. After the jury had retired they returned for further instructions, the foreman advising the court,

> "We would like to know the first degree and second degree charge, *the difference between it.*" (Emphasis supplied.)

The error of the instructions regarding the difference was then repeated:

> "If a person kills another purposely with deliberate and premeditated malice, he is guilty of murder in the first degree.

> "In order to constitute murder in the first degree there must be a purpose and an intent to kill. There must be coupled with this purpose and intent to kill premeditation and deliberation.

> "Now, that merely means that there is a turning over in the mind of the defendant a conceived plan or design whereby he is going to take and does take a human life. That is murder in the first degree.

> "Murder in the second degree is an unlawful killing with malice *but without a purpose or an intent to kill,* and without premeditation and deliberation." (Emphasis supplied.)

This is not cured by the further statement, immediately following, like that previously discussed, that the difference is that second degree murder "may be" committed without a purpose to kill. Here again there is the omission to clear away the confusion at the very time the jury explicitly indicated the matter was not clear to them. It was essential to a full and fair instruction, in such a case as this, that the jury understand they could convict of second degree murder though there was a purpose to kill provided the purpose was not accompanied by deliberation and premeditation. If the jury believed, as the evidence permitted, that the killing was purposeful or intentional, the instructions given well might have led them to conclude they were required to bring in a verdict of first degree murder. This is not the law. An intent to kill is not inconsistent with second degree murder. Under certain circumstances such an intention may be present in that degree. State v. Johnson, 1931, 211 Iowa 874, 234 N.W. 263; State v. O'Donnell, 1916, 176 Iowa 337, 157 N.W. 870; see Bullock v. United States, 1941, 74 App. D.C. 220, 122 F.2d 213. Miller, Criminal Law, 277 (1934). This should have been made clear. The decisive difference between first and second degree is not intent or purpose, which might be present in either, but premeditation and deliberation.[2] Intent or purpose must be present in first degree murder but might be present in second degree, for an intentional killing without premeditation and deliberation may be murder in the second degree, Bullock v. United States, supra.

The error no doubt is attributable to a misconstruction of our statutory definitions of the degrees of murder. Omitting, as not now relevant, homicide by means of poison or in perpetrating or attempting to perpetrate a penitentiary or other specified offense, § 22–2401, D.C.Code (1940), first degree murder occurs when one,

> "* * * kills another purposely * * * of deliberate and premeditated malice * * *." (§ 22–2401)

Second degree murder occurs, § 22–2403, when one kills another,

> "* * * with malice aforethought, except as provided in section[s] 22–2401 * * *."

These provisions are not to be read as though the clause "except as provided in section[s] 22–2401 * * *" excludes from second degree murder every purposeful killing since § 22–2401 includes purpose as an element of first degree murder. Where there are deliberation and premeditation there necessarily is purpose and, therefore, the ingredients of first degree. Where, however, there is purpose but not deliberation and premeditation the crime may be second degree. The jury were never so instructed and indeed were led to believe

---

2. I am not now considering first degree murder committed in connection with a felony where premeditation and deliberation might not be necessary. (§ 22–2401, D.C.Code (1940) )

the homicide could not be second degree murder if there was a purpose to kill.

This error, which alone in my opinion requires a new trial, is emphasized by the instruction on premeditation and deliberation, stated to be present when,

> " * * * there is a turning over in the mind of the defendant a conceived plan or design whereby he is going to take and does take a human life. * * *"

It would have been sounder to have given the jury a fuller conception of the essentials of premeditation and deliberation, as was done in Pritchett v. United States, 1950, 87 U.S.App.D.C. 374, 185 F.2d 438, certiorari denied, 1951, 341 U.S. 905, 71 S.Ct. 608, 95 L.Ed. 1344;[3] in Bullock v. United States, supra; and in Fisher v. United States, 1946, 328 U.S. 463, at page 468, 66 S.Ct. 1318,.90 L.Ed. 1382, affirming, 1945, 80 U.S.App.D.C. 96, 149 F.2d 28. No specific mention was made that in first degree murder an appreciable time must elapse between formation of the intent to kill and commission of the fatal act itself. See Bullock v. United States, supra. To say that the intent to kill need be turned over in the mind of the accused is not precisely the same as saying that an appreciable time need elapse between formation of intent and the doing of the homicidal act. This failure to point up with clarity the appreciable time factor aggravated the error previously discussed. From all of this the jury could well have equated premeditation and deliberation with purpose or intent. The result would be to deprive of all meaning the statutory distinction between first and second degree murder. See Bullock v. United States, supra. Aside, however, from the omission to develop the meaning of deliberation and premeditation, if the accused is to be executed it should be only after conviction by a jury which has been instructed correctly as to the difference between the crime for which death is the penalty and second degree murder for which death is not the penalty.

I would grant a new trial.

## On Rehearing

### PER CURIAM.

The court *sua sponte* by order of July 1, 1952, granted a rehearing in this case. Since then the Government has filed a memorandum consenting that the case be remanded to the District Court for a new trial and counsel for the appellant agrees to that course.

The trial judge submitted to the jury the question whether the appellant was guilty of first degree murder, second degree murder, manslaughter, or not guilty by reason of self-defense. For present purposes we need say only that it was entirely proper on the conflicting evidence for the trial judge to submit to the jury the issue of first or second degree murder. As he said, the facts were for the jury to decide, not for the court. As he also said, the jury were obligated "to take the law as the court gives it. * * *"

As pointed out by Judge Fahy in his dissent of May 8, 1952, the trial judge in giving the law to the jury did not state accurately the difference between first and second degree murder or remove the confusion which the jury evidenced in that regard. It is therefore impossible to say that the verdict is a true reflection in law of the jury's view of the facts. In their view of the facts the verdict might have been second degree murder had that crime been accurately defined and the difference between it and first degree clarified. The matter being a vital one the judgment necessarily must be reversed.

The defect in the instructions which is the turning point of our decision was not called to the attention of the trial court at any stage of the proceedings. But it is the well settled duty of an appellate court to correct such prejudicial error, particularly in a capital case, even though not pointed out in the trial court. Patten v. United States, 1914, 42 App.D.C. 239; Burge v. United States, 1906, 26 App.D.C. 524. See, also, Collazo v. United States, 1952, 90 U.S.App.D.C. ——, 196 F.2d 573, and Rule 52(b), Fed.R.Crim.P., 18 U.S.C.A.

---

3. The text of the charge appears in the record on file in the office of the Clerk of the Supreme Court.

On the other questions the court adheres to the opinion of May 8, 1952, written by Judge Clark.

Judgment heretofore entered herein vacated, judgment of the District Court reversed, and case remanded to the District Court for new trial or other proceedings consistent with the opinion of this court.

CLARK, Circuit Judge (dissenting).

I regard it a most serious miscarriage of justice to remand this cause for new trial. The murder of which appellant was convicted was as cold-blooded, deliberate, and premeditated as any I have ever considered. Appellant sought out his victim and waited patiently for his chance to see him. After a brief conversation, he shot him once in the chest, and then fired two murderous bullets into the back of his victim's head as the wounded and dying man lay prostrate upon the floor. That is the case which was proved, and that is the crime of which appellant was convicted, and the jury's verdict was most certainly one which a reasonable man might reach upon the evidence presented.

The sole reason for reversal is an unrealistic view that appellant was prejudiced by error in the trial judge's charge to the jury. Certainly the judge committed error —But I do not for one moment accept the view that the error resulted in prejudice to the accused. Full, eloquent, and compelling proof of first degree murder had been carefully presented. Instead of causing prejudice to the appellant, when the trial judge introduced the alternative of second degree murder he opened the door for the jury to consider a lesser offense than that which had been so clearly proved. That the jury did not choose to find the lesser crime is no reason for this court to set aside a verdict which so manifestly might reasonably have been reached by the jury upon the evidence before it.

Appellant showed no consideration for his victim, and certainly he should not now receive the consideration and benefit of the highly recondite reasoning by which my brethren have concluded that appellant was prejudiced. Instead, I hold steadfastly to the view that in the cold light of reality, there was no prejudice and hence there is no cause for reversal.