**UNITED STATES of America, Appellee,**

**v.**

**Michael LONDE, Appellant.**

**No. 78–1416.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1978.

Decided Oct. 25, 1978.

Rehearing and Rehearing En Banc Denied Nov. 16, 1978.

Certiorari Denied Jan. 22, 1979. See 99 S.Ct. 1050.

**19**

John J. Stewart, Clayton, Mo., for appellant.

David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., argued, Robert D. Kingsland, U. S. Atty. and David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

Appellant, Michael Londe, was indicted by a grand jury for violating two sections of the Internal Revenue Code. Count I charged him with failing to file an income tax return for calendar year 1970 in violation of 26 U.S.C. § 7203. Count II charged Londe's tax return for 1971 was perjurious in violation of 26 U.S.C. § 7206(1). After pleading not guilty to both counts, Londe waived trial by jury and the case was heard before the Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

In the course of a lengthy trial, the government offered in evidence testimony on stipulations from approximately one hundred witnesses along with several hundred exhibits. Defendant Londe, on the other hand, introduced little evidence in support of his defense other than a few exhibits.

Although not requested to do so, the trial judge prepared and filed a full memorandum which includes findings of fact and conclusions of law as well as general findings of guilt. See Fed.R.Crim.P. 23.

Londe was convicted of both counts and received a $15,000.00 fine and four years imprisonment. The district court determined that Londe had engaged in an elaborate "Ponzi scheme" or confidence game, see Cunningham v. Brown, 265 U.S. 1, 7–8, 44 S.Ct. 424, 68 L.Ed. 873 (1924). This finding was based in part on uncontroverted evidence which showed that from 1969 to 1972 Londe had represented to numerous individuals that he was able to purchase ambulance "shells" direct from a factory, equip them himself and resell them at a substantial profit. He promised to share this profit with investors who would loan him money to purchase the "shells" in exchange for his promissory notes. The notes were to bring a large rate of return over a short period of time.

The government's theory at trial was that this ambulance business was nonexistent. None of the companies that supposedly had supplied the "shells" or purchased Londe's finished product had any record of dealing with him. He stipulated that he had forged the signatures of various officers of one reputable ambulance company in an effort to establish his affiliation with it.

Several of the many disgruntled investors testified to conversations they had with Londe. This testimony showed that he had given them conflicting statements as to why he was unable to obtain ordinary financing for his venture and why he failed to repay his debts to them promptly. Six such witnesses stated that Londe told them there would be no need to report any profits from their investments to the I.R.S. since all the transactions were in cash and he was not going to report his earnings.

The district court found these "investments" were not true loans since the funds were obtained by fraud and the evidence indicated that Londe recognized no obligation to repay them but instead used the borrowed money for his own purposes, repaying only those loans necessary to preserve his scheme with money borrowed from other investors. Witnesses testified that he had issued them checks which were returned by his bank without clearing. Many investors realized little or no return of capital.

The government's documentary evidence showed that Londe's gross income in 1970 was $114,000.00. This figure increased to more than $250,000.00 in 1972. These dollar amounts largely represent the difference between the money received from Londe's investors and the money he returned to them in partial repayments. In 1970 the personal expenditures from his seven checking accounts totalled $47,994.00. In 1971

the total was $40,432.00. Yet he declared no income in 1970 and only $28,000.00 in income in 1971.

Londe attempted to explain his large personal expenditures on furs, jewelry, automobiles and new homes by asserting that family and friends had given him sizeable sums of money. The government introduced testimony refuting these contentions. An alleged $17,000.00 loan from Londe's father would have come at a time when his father had assets of only $4,000.00. An uncle and cousin denied having given Londe an $11,000.00 gift. And the attorney of a deceased friend could find no record of an alleged $15,000.00 gift.

■ The large discrepancy between the amount of gross income traced to Londe by the I.R.S. and the smaller amount of his recorded personal expenditures presented an additional problem for Londe. He claimed to have paid this money or much of it to Robert Decker, an employee of the International Harvester Company, who supposedly ran some major aspects of the ambulance venture. Decker allegedly failed to return the money given to him by Londe. Both in the district court and on appeal, Londe has alleged that the I.R.S. investigating agents failed to follow a "reasonable lead" he had given them because they did not look into or subpoena Decker's financial records and thus that judgment should be entered for defendant.

The district court found that "given all the evidence refuting defendant's alleged connection with Decker, defendant's lead was not reasonable and did not warrant follow-up beyond the production of Decker as a government witness," which did occur. Londe admitted never having met Decker, had no record of correspondence with him, and could produce no receipts for his alleged payments to Decker. Decker denied involvement with defendant directly or indirectly. Consequently, Londe's assertion that Decker was the person responsible for the ambulance swindle was deemed incredible.

The "reasonable lead" doctrine enunciated in *Holland v. United States*, 348 U.S.

121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), was applied first in a "net worth" case. It requires the government to track down relevant leads furnished by a taxpayer—leads reasonably susceptible of being checked, which if true could establish the taxpayer's innocence. The doctrine has been extended somewhat to other areas, *see, e. g., United States v. Ramsdell*, 450 F.2d 130 (10th Cir. 1971), but is of doubtful application in the case at bar where the defendant's alleged unreported income is shown to have come from his victims. But assuming application of the lead doctrine to a case of this kind, it still can be applied only where there is a reasonable lead, and where, as here, the district court has found the lead completely lacking in credibility, a finding amply supported by the evidence, we can find no error in the conclusion of the district court that further follow-up was unwarranted.

■ On appeal Londe alleges several other trial errors, all of which go to the sufficiency of the evidence supporting Judge Nangle's findings of fact and the resulting conviction. In reviewing a conviction in a criminal case, we must consider the evidence in a light most favorable to the government and cannot set aside factual findings made by the trial judge unless they are determined to be clearly erroneous, at least where such findings concern matters other than the ultimate question of guilt. *United States v. Marley*, 549 F.2d 561, 563 (8th Cir. 1977); *United States v. Rischard*, 471 F.2d 105, 107 (8th Cir. 1977); *Kilcrease v. United States*, 457 F.2d 1328, 1331 (8th Cir. 1972).

After giving careful consideration to the issues raised by appellant, we have determined that the record fully supports the general and special findings of the trial court and the judgment of conviction on both counts of the indictment. We must, therefore, reject Londe's arguments.

Affirmed.