UNITED STATES of America, Appellee,

v.

**James David BLUE THUNDER, Appellant (two cases).**

**78–1734, 79–1060.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1979.

Decided Aug. 3, 1979.

Rehearing Denied Sept. 11, 1979.

Certiorari Denied Oct. 9, 1979. See 100 S.Ct. 215.

Wayne F. Gilbert, Gunderson, Farrar, Aldrich, Ward & DeMersseman, Rapid City, S.D., for appellant; James David Blue Thunder, appellant, filed brief pro se.

Jeffrey L. Viken, Asst. U.S. Atty., Sioux Falls, S.D., for appellee; Robert D. Hiaring, U.S. Atty., and Gary G. Colbath, Asst. U.S. Atty., Sioux Falls, S.D., on the brief.

Before GIBSON, Chief Judge, and ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

James David Blue Thunder was convicted of first degree murder under provisions of 18 U.S.C. §§ 1111 and 1153 for stabbing to death with a butcher knife one Theresa Sands Blue Thunder who once had been his wife. He was sentenced by the district court[1] to life imprisonment. His appeal from that conviction and sentence, No. 78–1734, was filed with this court in September of 1978. Subsequently we remanded the case for an evidentiary hearing on the question of effective assistance of trial counsel. On remand, the district court conducted a hearing and filed findings of fact, conclusions of law and an order stating its determination that Blue Thunder had been adequately represented at trial. He appeals that determination in No. 79–1060. The two appeals were consolidated for submission to this panel. We affirm.

For reversal, Blue Thunder contends that (1) the evidence was insufficient to support his conviction; (2) he was denied effective assistance of counsel at trial; (3) evidence of flight was improperly placed before the jury; and (4) the district court erred in denying certain of his post-trial motions.

*Sufficiency of the Evidence.*

Blue Thunder does not assert here that the government failed to prove beyond a reasonable doubt that he killed Theresa. The evidence clearly establishes that he stabbed his victim to death in her automobile on the tribal pow-wow grounds of the Rosebud Indian Reservation in South Dakota. The combined testimony of four government eyewitnesses disclosed that

---

1. The United States District Court for the District of South Dakota, The Honorable Andrew W. Bogue, District Judge, presiding.

Blue Thunder forced his way into the victim's automobile, put a butcher knife to her throat, and eventually stabbed her in the back as she attempted to escape his grasp. One of the witnesses testified that he actually pulled Blue Thunder from the victim's body as it rolled from the vehicle. A second stated that Blue Thunder threw "an object" into a wooded area as he fled the scene. Investigating officers searched that area and recovered the murder weapon.

Blue Thunder does argue, however, that this and the remainder of the government's evidence is insufficient to support his conviction for first degree murder because it fails to establish that he committed the homicide with premeditation. Section 1111, under which he was convicted, retains the common law distinction between second degree murder, requiring only intent-to-kill with malice aforethought, and first degree murder which, in addition, requires intent-to-kill with premeditation and deliberation.[2] *See Beardslee v. United States*, 387 F.2d 280 (8th Cir. 1967). Whether the defendant perpetrated the murder with premeditation is, of course, a jury question. 387 F.2d at 288–89; *Weakley v. United States*, 91 U.S. App.D.C. 8, 198 F.2d 940, 942 (D.C. Cir. 1952).

The relevant evidentiary factors to be considered in determining the existence of premeditation have been cogently summarized as follows:

> On the basis of events before and at the time of the killing, the trier of fact will sometimes be entitled to infer that the defendant actually premeditated and deliberated his intentional killing. Three categories of evidence are important for this purpose: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, *planning activity* ; (2) facts about the defendant's prior relationship and con-

duct with the victim from which *motive* may be inferred; and (3) facts about the *nature of the killing* from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design. (Emphasis in original.)

W. LaFave & A. Scott, Jr., Criminal Law § 73 at p. 564 (1972). *See also People v. Anderson*, 70 Cal.2d 15, 73 Cal.Rptr. 550, 447 P.2d 942 (1968); Annot., 96 A.L.R.2d 1435 (1964). We also note that in establishing premeditation the government was not required to show the defendant deliberated for any particular length of time before perpetrating the murder. *Weakley v. United States, supra,* 91 U.S.App.D.C. at 10, 198 F.2d at 942.

Although the government introduced all three types of premeditation evidence, it stressed the defendant's planning activities. It first called two witnesses who placed him in the vicinity of the victim's automobile thirty minutes prior to the stabbing. One of the witnesses, a tribal policeman, testified that at that time Blue Thunder appeared to be in a sober, rational frame of mind. The government then established that the victim's automobile had been in good running condition prior to its arrival at the pow-wow grounds but that sometime during the celebration it had been disabled through disconnection of a coil wire. The government took the position that the defendant had calmly and deliberately planned the murder, removing the coil wire and then timing his attack to coincide with the victim's attempt to start the vehicle.

The victim's sister testified that Blue Thunder had brought the murder weapon with him to the scene of the stabbing. This weapon, a butcher knife, had disappeared from the residence of Blue Thunder's aunt several days before the date of the murder. Even in the absence of

---

**2.** 18 *U.S.C.* § 1111 states in pertinent part: (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, mali-

cious, and premeditated killing; . . . *is* murder in the first degree.

Any other murder is murder in the second degree.

\* \* \* \* \* \*

proof of motive, the jury is generally allowed to infer premeditation from the fact that the defendant brought the deadly weapon to the scene of the murder. *See, e. g., United States v. Brooks*, 146 U.S.App. D.C. 1, 449 F.2d 1077 (D.C. Cir. 1971); *United States v. Sutton*, 138 U.S.App.D.C. 208, 426 F.2d 1202 (D.C. Cir. 1969); *Belton v. United States*, 127 U.S.App.D.C. 201, 382 F.2d 150 (D.C. Cir. 1967). *Cf. Hemphill v. United States*, 131 U.S.App.D.C. 46, 402 F.2d 187 (D.C. Cir. 1968) (no inference of premeditation where defendant may have obtained murder weapon at scene of crime); *Austin v. United States*, 127 U.S.App.D.C. 180, 382 F.2d 129 (D.C. Cir. 1967) (defendant's appearance with the murder weapon does not support an inference of premeditation if the nature of the weapon—there a pocket knife—is such that it would be regularly carried for another purpose).

With respect to proof of motive, the government introduced evidence of the defendant's dissatisfaction with his brief and unstable marriage with the victim.

Finally, government counsel argued that the nature and manner of the stabbing indicated Blue Thunder's premeditated intent to kill his victim. The knife had been thrust into the center of her back with force sufficient to pierce her heart. *See People v. Hillery*, 62 Cal.2d 692, 44 Cal.Rptr. 30, 401 P.2d 382 (1965) (plunging of knife into victim's chest is evidence of defendant's premeditated intent-to-kill).

In reviewing a conviction in a criminal case, we consider the evidence in the light most favorable to the government drawing all reasonable inferences in support of the jury verdict. *United States v. Londe*, 587 F.2d 18, 20 (8th Cir. 1978); *United States v. Lanier*, 578 F.2d 1246, 1249–50 (8th Cir.), *cert. denied*, 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978). So considered we conclude without hesitation that the totality of the evidence clearly supports the jury's finding of premeditation and of guilt as charged.

*Effective Assistance of Counsel.*

Blue Thunder asserts that he was denied effective assistance of trial counsel because his court appointed attorney failed to (1) develop a possible insanity defense, (2) conduct a reasonable pretrial investigation of the murder charges, (3) confer with him prior to trial concerning the evidence against him and possible strategies to rebut that evidence, (4) counsel him on the potential ramifications of his decision not to testify in his own behalf, and (5) actively represent him at trial by impeaching certain witnesses, objecting to certain evidence, etc.

As noted, the district court conducted a plenary hearing on these charges and determined they were without merit. In reviewing that determination we are mindful of the presumption that the defendant received effective representation.

The standard for effective assistance of counsel 'is now established as that degree of performance which conforms to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances.' *Reynolds v. Mabry*, 574 F.2d 978, 979 (8th Cir. 1978). The exercise of reasonable professional judgment, 'even when hindsight reveals a mistake in that judgment, does not render a lawyer . . . lacking in competence in rendering his services.' *Id.* There is a presumption that counsel has rendered effective assistance. *Thomas v. Wyrick*, 535 F.2d 407, 413 (8th Cir.), *cert. denied*, 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). To overcome the presumption, [the Defendant] 'must shoulder a heavy burden.' *McQueen v. Swenson*, 498 F.2d 207, 214 (8th Cir. 1974).

*Catches v. United States*, 582 F.2d 453, 456–57 (8th Cir. 1978). Also, the defendant must show that he was "materially prejudiced in the defense of his case by the actions or inactions of defense counsel." *Morrow v. Parratt*, 574 F.2d 411, 413 (8th Cir. 1978), and cases cited therein. We have carefully considered Blue Thunder's arguments and, on the record before us, cannot say that the district court was clearly erroneous in finding effective assistance of counsel.

Blue Thunder, himself, thwarted his trial counsel's attempts to complete the psychiatric evaluation which the defendant now argues could have resulted in a possible insanity defense. The district court cooperated with counsel in scheduling psychiatric evaluations of the defendant on three separate occasions. The first was cancelled because Blue Thunder left South Dakota while released on bond and did not return for evaluation as ordered by the court. He was subsequently arrested by Pennsylvania authorities on the second order for evaluation but was released on his own recognizance and placed on an airplane to return for a rescheduled evaluation. He violated that trust by deplaning at an intermediate stop and assuming fugitive status. After his eventual arrest and return to South Dakota, the evaluation was finally held. Blue Thunder then refused to cooperate with the examining psychiatrist, thus preventing him from filing a report with the district court. We believe that Blue Thunder's failure to receive a full psychiatric evaluation was inconsequential, however, since the district court discussed the matter with him and he chose to waive any insanity defense he otherwise might have had.[3] Moreover, we have searched the record in vain for any solid support for even a suspicion that Blue Thunder might be or might have been mentally incapacitated in any degree.

Concerning the alleged failure of trial counsel to conduct adequate pretrial investigation and to include Blue Thunder in pretrial strategy planning, the district court noted that trial counsel aggressively represented the defendant at the preliminary hearing, during pretrial preparation and at trial. Blue Thunder's decision to leave South Dakota for an extended period of time prior to trial was the principal cause of counsel's failure to confer with him on a more frequent basis. The record shows that prior to Blue Thunder's assumption of fugitive status, trial counsel obtained complete discovery of the government's case file, hired an independent investigator to research the charges, and conferred with the defendant by telephone about the case. We agree with the district court that, in the circumstances, it does not appear that a reasonably competent attorney would have done more. See Benson v. United States, 552 F.2d 223, 225 (8th Cir.), cert. denied, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977).

Counsel also made several tactical decisions at trial to which Blue Thunder now objects. He chose not to impeach the testimony of certain government witnesses and not to object to certain lines of government questioning. And counsel advised the defendant not to testify in his own behalf because of the likelihood of government impeachment concerning the defendant's marine combat experience and his prior felony convictions. The district court commented that counsel is an experienced defense attorney who has tried dozens of criminal cases arising from the Rosebud Reservation. Our review of the record indicates that he skillfully conducted the defense of his client in the face of overwhelming evidence of guilt and cannot be seriously faulted for the quality of his representation. As we stated in Robinson v. United States, 448 F.2d 1255, 1256 (8th Cir. 1978):

Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used . . . When that judgment exercised turns out wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel.

3. The record reflects that the following exchange took place:

THE COURT: Well, I would state for the record that Mr. Blue Thunder is obviously way above average mentality, that he's been educated in an institution of higher learning, that he is articulate, resourceful, has even engaged in part of the cross-examination himself, and from my observations of him, I would certainly concur with [defense counsel] about his ability to aid in the preparation of his defense and participate in it, and also, as I gather it, there seems to be no question, at least in your mind, about any evaluation of the Defendant as of the time and date of the particular incident in question; is that correct?

DEFENSE COUNSEL: That's correct, Your Honor.

THE COURT: Do you concur in that Mr. Blue Thunder?

DEFENDANT: Right.

*Evidence of Flight.*

█ It is undisputed that "flight of the accused subsequent to the commission of a crime is, in certain instances, 'a circumstance proper to be laid before the jury as having a tendency to prove his guilt.'" *United States v. Peltier,* 585 F.2d 314, 322 (8th Cir. 1978), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979), *citing Allen v. United States,* 164 U.S. 492, 499, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The facts of each case must be scrutinized to determine whether the jury properly may draw an inference of guilt from the defendant's flight, for the validity of that inference "depends upon the number of evidentiary manifestations suggesting defendant's decision to flee was prompted by considerations related to the crime in question." 585 F.2d at 323.

█ The government called two witnesses whose testimony revealed that Blue Thunder had fled from the scene of the murder. The first witness testified that as the defendant ran from the pow-wow grounds he threw "an object" into a wooded area. This evidence of immediate flight was highly probative of Blue Thunder's guilt and was admissible under *Peltier;* it linked the defendant to the murder weapon which was later recovered from that area. The second witness, a local resident who lived near the pow-wow grounds, testified the defendant appeared at his residence several hours after the murder and stated: "Well, I did something bad last night that I shouldn't have never [sic], ever done." This evidence of continued flight was also admissible since it laid the foundation for an admission by the defendant.

█ Prior to trial, the government agreed that it would not introduce evidence of the defendant's post-arraignment flight following his failure to return to South Dakota for psychiatric evaluation. Yet during cross-examination of the defendant's aunt government counsel made inquiries which highlighted Blue Thunder's absence from South Dakota and the fact that officers were searching for him. Traditionally, evidence of flight temporally remote from

the crime has been admitted as evidence of guilt. *State v. Ball,* 339 S.W.2d 783 (Mo. 1960); Annot., 25 A.L.R. 886, 897–98 (1923) and cases cited therein. In *Peltier,* we thoroughly considered the admissibility of flight evidence and noted that our cases did not require exclusion of all evidence of flight remote in time from the crime. *United States v. Peltier,* 585 F.2d 314, 324 (8th Cir. 1978).

█ The present case involved the additional factor of a prosecution agreement not to introduce such evidence. Our independent examination of the challenged testimony has established that the fleeting reference to post-arraignment flight was at most harmless error when compared to the overwhelming evidence of guilt. We also find no error in the district court's decision to give a limiting jury instruction on flight. We approved the instruction given in similar circumstances in *Peltier, supra,* and *United States v. White,* 488 F.2d 660, 662 (8th Cir. 1973). *See* Vol. I, E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 15.08 (1977).

*Post-Trial Motions.*

Blue Thunder's final arguments relate to certain post-trial motions denied by the district court.

█ The court denied the defendant's request for access to the South Dakota State Law Library in Pierre while he was incarcerated in a county jail in that city pending sentencing. He now asserts that this denial violated his constitutional right to access to the courts as set forth in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The *Bounds* Court determined that prison authorities are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisons with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. We need not determine to what extent the rights recognized in *Bounds* apply to persons temporarily incarcerated while awaiting sentencing, for it is

clear from the record that during the period of confinement in question Blue Thunder received the adequate legal assistance contemplated by *Bounds* from a law student intern working in trial counsel's office. *See* 430 U.S. at 830–31, 97 S.Ct. 1491.

The district court also denied Blue Thunder's post-trial motion for the appointment of a psychiatric expert to complete his mental evaluation. We determine the court did not abuse its discretion in denying that motion since the defendant had previously waived any insanity defense, *see* n. 3, *supra*, and since, as indicated, the record contains no real suggestion that Blue Thunder had a viable insanity defense.

Finally, the district judge refused to disqualify himself from the remand hearing on effective assistance of trial counsel. In terms of judicial efficiency, the trial judge was the logical person to preside over that hearing; and we find no abuse of discretion in his decision not to recuse himself. The defendant has not shown that the judge was in any way biased or prejudiced against him.

ROSS, Circuit Judge, concurring.

I concur in the judgment affirming the conviction, but I feel obligated to point out and deplore the use of an unfair argument by the prosecutor to the jury.

Even though no one testified that the defendant even touched the car, or in particular the distributor wire, prior to the assault, the prosecutor argued to the jury that the evidence showed that the defendant disabled the car by disconnecting the distributor wire. This overreaching by the prosecution was, in my opinion, most unfair and should not pass unnoticed.

In my opinion the evidence bearing on premeditation was adequate without this argument and thus I would hold the prosecutor's argument to be error but not prejudicial.