UNITED STATES of America, Appellee,

v.

Richard WILSON, Appellant.

No. 92–2709.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1993.

Decided April 23, 1993.

---

R. Thomas Day, Asst. Federal Public Defender, St. Louis, MO, argued, for appellant.

Thomas J. Mehan, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and BRIGHT, Senior Circuit Judges.

PER CURIAM.

Richard Wilson appeals the eighty-eight month sentence imposed by the district court [1] following his guilty plea to possessing a firearm after having been convicted of a felony and possessing a firearm not registered to him, in violation of 18 U.S.C. § 922(g) and 26 U.S.C. §§ 5861(d), 5871. We affirm.

The presentence report (PSR) stated that on September 27, 1991, two City of St. Louis police officers heard two shotgun blasts in the 3600 block of Indiana Avenue. The officers then observed a 1982 beige Chevrolet Celebrity occupied by three people leaving the area with its headlights off. The officers pursued the vehicle, but its occupants abandoned the car and escaped on foot. A search uncovered a 20–gauge, single-shot, sawed-off shotgun on the floor in front of the vehicle's front passenger seat. Two spent shotgun shell casings were found next to the gun. PSR at ¶ 3. Further investigation revealed that a man standing in front of 3630 Indiana had been hit in the forehead by a shotgun pellet. *Id.* at 4. Wilson's fingerprints were later discovered on the gun, and he was arrested. Wilson provided police with the following statement:

> I was in the house when Ernest pulled up and got out and told Nick to go to get his pump. Nick gave Ernest the pump, Ernest ran down the street and shoot the man and Nick and Ernest jumped in the Firebird and pulled off. They came back in a creme car and Ernest told me to get in and I did. Nick was in the back and I was in the front passenger side. Ernest yelled shoot and Nick shoot and I shoot in the air cause I was scared to shoot those

---

1. The Honorable Edward L. Filippine, Chief Judge, United States District Court for the Eastern District of Missouri.

people. Cause they didn't do nothing to me.

Appellee's App. at 1–2.

The PSR determined that, under U.S.S.G. § 2K2.1(a)(1) (Nov. 1990), Wilson's base offense level was 18. Because he had used the firearm in an attempt to commit another offense, however, section 2K2.1(c)(1) required application of U.S.S.G. § 2X1.1, if the resulting offense level would be greater. Under U.S.S.G. § 2X1.1, the PSR applied U.S.S.G. § 2A2.1(a)(1), which specifically covers assault with intent to commit murder and attempted murder, to get to a base offense level of 28.

Wilson objected, arguing that the correct base offense level was 18. He denied that he shot or intended to shoot anyone. Wilson also objected to the characterization of his actions as attempted first-degree murder and maintained that the PSR had not explained why it chose first-degree rather than some other degree of murder, or manslaughter.

Following a sentencing hearing at which the only witness was Detective Roy Douglas of the St. Louis Metropolitan Police Department, the district court found that two shots came from the car in which Wilson was a passenger; that the shot Douglas observed came from the front passenger seat and was fired by Wilson in the direction of people; that Wilson entered the car knowing its occupants had been involved in an earlier shooting; and that Wilson's statement about shooting in the air was not credible and was directly contradicted by Douglas's testimony. Sent. tr. at 56–58. The district court stated that there may have been two guns involved; that it could not find that a pellet from Wilson's gun struck the victim; but that, under the preponderance standard, the evidence was sufficient to find that Wilson attempted to commit first-degree murder. *Id.* at 59–61.

On appeal, Wilson argues that the district court clearly erred by finding that (1) he aimed his gun in the direction of people based on Douglas's testimony regarding the direction of the flash; and (2) he attempted to commit first-degree murder because there was no evidence of premeditation or deliberation.

■ We review a sentencing court's factual findings under the clearly erroneous standard. *United States v. Balfany,* 965 F.2d 575, 584 (8th Cir.1992). The district court did not clearly err by finding that Wilson pointed and fired his gun directly out of the front passenger window towards the people that were standing in front of 3630 Indiana Avenue. Douglas testified that he witnessed the flash of a shotgun emerge from the window of the right front passenger seat in a horizontal direction. Wilson's written statement indicates that there were people standing on the street at the time he fired the shotgun. In view of Douglas's testimony about the direction of the flash, which the district court found credible, the district court was entitled to disregard Wilson's claim that he fired the gun into the air.

■ As to Wilson's second claim, section 2A2.1, comment. (n. 2) refers to 18 U.S.C. § 1111 for the definition of first-degree murder. That statute requires, in addition to an unlawful killing with malice aforethought, proof of premeditation and deliberation. *United States v. Blue Thunder,* 604 F.2d 550, 553 (8th Cir.), *cert. denied,* 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979). "[I]n establishing premeditation the government [is] not required to show the defendant deliberated for any particular length of time...." *Id.* Whether the defendant committed or attempted a murder with premeditation is a question of fact. *Id.*

The district court focused on Wilson's actions prior to the shooting to support its finding of premeditation and deliberation. The district court noted that Wilson got into a car with two men who had just been involved in a shooting. He was either armed when he entered the car, or given a weapon by one of the others. Then, Wilson fired a shotgun out of the passenger's window of the car towards a group of people. Sent. tr. at 60. This evidence supports the district court's finding of premeditation and deliberation. *Cf. United States v. Slader,* 791 F.2d 655, 657–58 (8th Cir.) (affirming first-degree murder conviction based on evidence that defendant shot wife two times with shotgun that was usually kept unloaded), *cert. denied,*

479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986).

Accordingly, we affirm.[2]

HEANEY, Senior Circuit Judge, concurring.

Though I am compelled by this court's precedents to concur in affirming the sentence in this case, I write to indicate my continuing belief that uses of relevant conduct such as that in this case violate the offenders' rights to due process of law.

My dispute is not over whether a preponderance of the evidence supported a finding of attempted first-degree murder, but whether we, or any federal court, should be making any finding in this regard. The attempted murder alleged in this case is not a federal offense. This is not simply a case in which a federal prosecutor chose not to charge an offense, or the offense was charged and the offender acquitted, and then the prosecutor took a second bite of the apple by introducing the conduct as relevant to sentencing. Rather, the prosecutor could not even have charged Wilson with the alleged attempted murder. The proper place for this charge is in state court, where Wilson would have the right to a jury trial, to confront witnesses, and to have the necessary findings made beyond a reasonable doubt.

Instead Wilson has had his sentencing range increased from 27–33 months to 78–97 months, roughly a three-fold increase.[1] The result closely approximates the real-offense sentencing that the Sentencing Commission claims to have rejected, see Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises on Which They Rest*, 17 Hofstra L.Rev. 1, 10–12 (1988), and it raises all of the fairness and due process problems that caused real-offense sentencing to be rejected. Implemented in this manner, rather than "promoting justice under law, the guidelines are merely law without justice." Boyce

F. Martin, Jr., *Advisory Guidelines and Constitutional Infirmities*, 5 Fed.Sent.R. 192, 192 (1993).

---

2. Judge Bright agrees with the comments of Judge Heaney. Those comments again emphasize that most observers believe that the guideline system of sentencing needs radical change, if not abandonment. *See Forum on the Sentencing Guidelines, Suggestions for the President and the 103rd Congress on the Guideline Sentencing System*, 5 Fed.Sent.R. 187 (Jan./Feb. 1993).

1. Wilson's base offense level moved from 18 to 28 through application of the cross-reference provision in the guidelines, but he received a two-level reduction for acceptance of responsibility. His adjusted offense levels were then either 16 or 26, and he fell into criminal history category III. He was sentenced to 88 months.