# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-2542

_____

United States of America

*Plaintiff - Appellee*

v.

Rodney Tyrone Henry

*Defendant - Appellant*

_____

No. 23-2554

_____

United States of America

*Plaintiff - Appellee*

v.

Daryl Strickland, Jr.

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: February 13, 2024
Filed: July 2, 2024
[Published]
_____

Before SMITH, Chief Judge,[1] BENTON and STRAS, Circuit Judges.
_____

PER CURIAM.

Daryl Strickland, Jr., and Rodney Tyrone Henry pleaded guilty pursuant to written plea agreements to murder while discharging a firearm in furtherance of a crime of violence. Both were subsequently sentenced to life imprisonment by the district court.[2] On appeal, Strickland and Henry argue that the district court erred in finding that they committed the murder with premeditation. Henry also argues that the district court erred in calculating his criminal history score and that his sentence of life imprisonment is unreasonable. We affirm.

## I. *Background*

Strickland and Henry were charged in a six-count indictment with two counts of conspiracy to interfere with commerce by robbery, one count of attempt to interfere with commerce by robbery, one count of murder while discharging a firearm in furtherance of a crime of violence, one count of interference with commerce by robbery, and one count of brandishing a firearm in furtherance of a crime of violence. Strickland and the government subsequently entered into a plea agreement. Strickland agreed to waive indictment and permit the government to file a superseding

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

information charging him with murder while discharging a firearm in furtherance of a crime of violence; in exchange, the government agreed to dismiss the indictment. Strickland stipulated that the following facts were true in his plea agreement:

On November 12, 2018, at 5:22pm, Daryl Strickland, Jr. and Rodney Tyrone Henry knocked on the front door of Wise Buck Pawn Shop in Pine Bluff, Arkansas, and asked if the store was still open. Wise Buck Pawn Shop was a federal firearms licensee, engaging in business that affected interstate commerce. The owner of the pawn shop, Brandon McHan, told Strickland and Henry through the locked front door that the store was closed for the night. Strickland and Henry then appeared to leave the area. McHan and his friend, Jason Booth, who were the only two in the store, continued closing. At approximately 5:30pm, McHan and Booth exited the front door of the pawn shop to start their vehicles because it was cold. Booth put his firearm in his car, and both went back inside the store. At 5:34pm, Strickland and Henry entered the threshold of the pawn shop, and Strickland fired several gunshots, striking both McHan and Booth multiple times. Strickland and Henry then retreated from the entrance of the store. Two minutes later, Strickland and Henry both returned to the front door of the pawn shop, and Strickland began shooting into the pawn shop. When McHan and Booth fired back, Strickland retreated. After Strickland retreated, Henry fired multiple gunshots into the pawn shop. Strickland then returned to the doorway of the pawn shop and fired more gunshots inside. Strickland and Henry then left the scene.

Approximately an hour later, Strickland and Henry entered the Alon gas station at 2800 South Olive Street in Pine Bluff, Arkansas, and held the store clerk at gun point. Henry, while pointing a firearm at the store clerk, went behind the counter and emptied the cash register. Strickland remained at the front of the counter, also holding the clerk at gunpoint. In addition to $800, Henry stole the store clerk's firearm.

Brandon McHan died later that night. McHan's autopsy revealed three gunshot wounds, which caused his death. The first bullet entered his right abdomen and exited his back. The second bullet entered his

right thigh and exited his right hip. A third [gunshot] was a through-and-through wound to the right lower leg. Booth, who was near the door when Strickland initially opened fire into the pawn shop, was shot in the face near the chin area, and the bullet exited through his neck. Booth was also shot in the left hand.

R. Doc. 80, at 6–7.

Strickland's plea agreement contains an appeal waiver. Strickland agreed to

waive[] the right to appeal all non-jurisdictional issues including, but not limited to, any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea, including the sentence imposed or any issues that relate to the establishment of the Guideline range.

*Id.* at 3. The appeal waiver, however, does afford Strickland "the limited right to appeal the substantive reasonableness of the sentence of imprisonment if the [c]ourt determines that the murder of Brandon McHan was premeditated and applies Application Note 2(A) of U.S.S.G. [§] 2A1.1 and imposes a life sentence." *Id.* at 3.

Henry also waived indictment and pleaded guilty pursuant to a plea agreement to the superseding information charging him with murder while discharging a firearm in furtherance of a crime of violence. During Henry's change-of-plea hearing, the government read the same facts that Strickland stipulated to in his plea agreement and stated that it would present evidence at trial to prove those facts. Henry admitted to the district court that he had a weapon at the pawn shop and that he fired shots into the pawn shop. He also admitted that McHan was murdered with a firearm in the perpetration of the crime. As in Strickland's case, the appeal waiver in Henry's plea agreement prevents him from appealing, among other things, "the sentence imposed

-4-

or any issues that relate to the establishment of the Guideline range." R. Doc. 91, at 3. But it permits him "to appeal claims of prosecutorial misconduct," as well as

> the limited right to appeal [1] the substantive reasonableness of the sentence of imprisonment if the sentence is above the Guideline range that is established at sentencing and if the defendant makes a contemporaneous objection; . . . [2] if the [c]ourt determines that the murder of Brandon McHan was premeditated and applies Application Note 2(A) of U.S.S.G. [§] 2A1.1; and [3] . . . the substantive reasonableness of the sentence of imprisonment if the [c]ourt imposes a life sentence . . . .

*Id.*

Prior to sentencing, Henry, Strickland, and the government all filed sentencing memoranda with the district court. Strickland requested a sentence of less than life imprisonment, and Henry requested a downward variance. Henry also filed a motion for a downward departure.

The district court held a joint sentencing hearing. It noted that the applicable statute provides for a maximum term of life imprisonment. The district court calculated Strickland's Guidelines range to be 324 to 405 months' imprisonment. Henry objected to three criminal history points that he was assessed for two Arkansas juvenile convictions, arguing that he should not have received criminal history points for those convictions because they should have been expunged under Arkansas law. The district court overruled Henry's objection. It calculated Henry's Guidelines range to be 360 months' to life imprisonment.

Next, the parties litigated the issue of premeditation to determine the applicability of Application Note 2(A) of U.S.S.G. § 2A1.1. The government offered into evidence, among other things, security camera footage from the pawn shop

(Exhibit 1). The government played relevant clips of Exhibit 1 for the district court, which shows the following events. Strickland and Henry approached the pawn shop at approximately 5:22 p.m. and left at approximately 5:23 p.m. In his interview with law enforcement, Strickland admitted that he and Henry reentered the car and talked about how they were going to go back and approach the pawn shop. At approximately 5:35 p.m., Strickland entered the threshold of the pawn shop and began firing shots, Henry stuck his head into the threshold of the pawn shop, and then they both retreated. At 5:36 p.m., Strickland shot again, Henry shot, Strickland returned to fire more shots, and then they both retreated. The government played another clip from Exhibit 1, which is footage from a different camera inside the pawn shop. The government pointed out to the court that the shots fired by Henry were fired where Booth had been standing when Henry had previously stuck his head through the door.

After hearing the parties' arguments, the district court found that both Strickland and Henry acted with premeditation. The district court found that Strickland acted with "premeditation in his decisions to enter the Wise Buck Pawn Shop and essentially shoot first and ask questions later." R. Doc. 126, at 76. The district court further found that Henry did nothing to "dissuade[] Mr. Strickland in that first . . . fire fight" and that Henry intended "to kill the occupants inside" when he "shot into the store." *Id.*

Strickland moved for a downward variance from the application note stating that life imprisonment is the appropriate sentence and requested a sentence within what his Guidelines range would have been without the application note. The district court denied Strickland's motion for a downward variance and sentenced him to life imprisonment after "consider[ing] his presentence report in its entirety, the evidence received today, the comments of counsel, the comments of Mr. Strickland, the comments of the witnesses here today regarding their loss, and the factors found in 18 U.S.C. Section 3553." *Id.* at 110. The court concluded that a life sentence "is

sufficient but no greater than necessary to reflect the seriousness of the offense, promote respect for the law, but also address [Strickland's] needs." *Id.* at 111.

The district court denied Henry's prior request for a downward variance and his motion for a downward departure. "After . . . consider[ing] Mr. Henry's presentence report in its entirety, comments of counsel, and the comments of Mr. Henry as well as those who have spoken on behalf of the McHan family, and considering the provisions found in 18, U.S.C., Section 3553," the district court sentenced Henry to life imprisonment. *Id.* at 126. The court did not consider Henry to be any less culpable than Strickland based on the evidence.

## II. *Discussion*

On appeal, Strickland and Henry both argue that the district court erred in finding that the killing of McHan was premeditated and therefore warranted a life sentence under Application Note 2(A) of U.S.S.G. § 2A1.1. Henry additionally argues that the district court erred in calculating his Guidelines range because it included criminal history points for juvenile adjudications. Finally, Henry argues that his life sentence is substantively unreasonable because the district court failed to consider his age at the time of the offense, childhood trauma, intellectual ability, lack of a male role model, and role in the offense.

### A. *Premeditation*

Both Strickland and Henry challenge the district court's finding that they acted with premeditation in the killing of McHan for purposes of U.S.S.G. § 2A1.1. Strickland argues that the killing of McHan was an unplanned result of the botched robbery due to a victim who was "prepared for a firefight." Strickland's Br. at 7. He notes the lack of any text messages, telephone calls, or statements showing that he had the intent to kill prior to entering the pawn shop. He also points out that only eight seconds elapsed from when he entered the pawn shop and engaged in gunfire with McHan. Henry argues that there is no evidence that he "knew Strickland was

going to immediately open fire on the inhabitants in the pawn shop" or that he "organized or led the robbery." Henry's Br. at 9.

"Whether the defendant committed or attempted a murder with premeditation is a question of fact." *United States v. Wilson*, 992 F.2d 156, 158 (8th Cir. 1993) (per curiam). We review for clear error the district court's finding of premeditation. *United States v. Graham*, 323 F.3d 603, 609 (8th Cir. 2003).

"Section 2A1.1 sets a base offense level of 43 for first-degree murder." *United States v. Barraza*, 982 F.3d 1106, 1114 (8th Cir. 2020). Its commentary provides: "In the case of *premeditated* killing, life imprisonment is the appropriate sentence if a sentence of death is not imposed." *Id.* (emphasis added) (quoting U.S.S.G. § 2A1.1 cmt. n.2(A)). "The amount of time needed for premeditation must be long enough for the defendant, after forming the intent to kill, to be fully conscious of his intent, and to have thought about the killing." *United States v. Angel*, 93 F.4th 1075, 1079 (8th Cir. 2024) (cleaned up). But the government is not required "to show that the defendant deliberated for any particular length of time" to prove premeditation. *Id.* (internal quotation marks omitted). A defendant's "[s]wift but deliberate actions before shooting can demonstrate . . . the requisite premeditation." *Id.* (cleaned up).

Here, the video shows that Strickland and Henry approached the pawn shop but left after being told it was closed. Twelve minutes later, they returned. Strickland entered the threshold of the pawn shop and began firing shots, Henry stuck his head into the threshold of the pawn shop, and then they both retreated. A couple of minutes later, they returned. Strickland fired shots into the pawn shop again. Booth and McHan returned fire. Strickland retreated. Henry then fired several shots toward Booth and McHan, not away from them. Strickland then went to the pawn shop's front door and fired more shots. Thereafter, Strickland and Henry fled the scene. These facts show that Strickland and Henry "had enough time to be fully conscious

of [their] intent and to deliberate about [their] conduct. The district court did not clearly err in finding [they] acted with premeditation." *Id.*

## B. *Henry's Criminal History Score*

Henry argues that the district court miscalculated his criminal history score by assessing three criminal history points for two juvenile offenses. The government has moved to dismiss Henry's appeal in part, arguing that Henry's claim of procedural error in calculating his criminal history score is barred by his appeal waiver. We agree.

"We review de novo the issue of whether a defendant has knowingly and voluntarily waived rights in a plea agreement." *United States v. Guzman*, 707 F.3d 938, 941 (8th Cir. 2013) (internal quotation marks omitted). Our obligation is to "confirm that the appeal falls within the scope of the [appeal] waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *Id.* (internal quotation marks omitted). But we will not enforce an appeal waiver that a defendant entered knowingly and voluntarily if doing so "would result in a miscarriage of justice." *Id.* (internal quotation marks omitted).

Henry's appeal waiver explicitly waives all of his appellate rights *except* for claims of prosecutorial misconduct, as well as challenges to the "the substantive reasonableness of the sentence of imprisonment if the sentence is above the Guideline range that is established at sentencing and if [Henry] makes a contemporaneous objection," the district court's determination that Henry acted with premeditation as to the killing of McHan, and "the substantive reasonableness of the sentence of imprisonment if the [c]ourt imposes a life sentence." R. Doc. 91, at 3. Henry's argument that the district court procedurally erred in calculating his criminal history score because it included two state juvenile delinquency adjudications *does not* involve one of the enumerated exceptions listed in the appeal waiver. Instead, Henry's claim that the district court miscalculated his criminal history score is a claim

of *procedural* error. *See United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009) (treating a claim that the district court erroneously assessed criminal history points as a claim of procedural error); Henry's Br. at 10 ("The district court committed *procedural* error by improperly calculating Mr. Henry's criminal history score." (emphasis added)). Henry's appeal challenging the court's calculation of his criminal history score falls within the scope of the appeal waiver, not one of its exceptions.

The record also shows that Henry entered his plea agreement knowingly and voluntarily. In the plea agreement, Henry affirmed that he had "read this Agreement and Addendum and carefully reviewed every part of it with his/her attorney," that he "underst[ood] and voluntarily agree[d] to the terms and condition[s] of this Agreement and Addendum," and that he had "consulted with his . . . attorney and fully underst[ood] his . . . rights with respect to the provisions of the United States Sentencing Guidelines which may apply to this case." R. Doc. 91, at 13–14. Henry further acknowledged that he was not "threatened or forced . . . in any way to enter into this Agreement and Addendum" but instead "entered into this Agreement and Addendum, consciously and deliberately, by [his] free choice, and without duress, undue influence or otherwise being forced or compelled to do so." *Id.* at 14. Additionally, the district court confirmed at the change-of-plea hearing that Henry had "gone over the waivers section [of the plea agreement] with [his] lawyers." R. Doc. 125, at 16. Henry acknowledged that he was "giving up virtually every right of appeal [he] ha[s]" "by entering into this plea agreement." *Id.* The appeal waiver in Henry's plea agreement was entered into knowingly and voluntarily. *See Guzman*, 707 F.3d at 941.

"Based on the record, we conclude the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *Id.* at 942 (internal quotation marks omitted). Because Henry's life sentence is within the applicable statutory range, no miscarriage of justice results from enforcement of the appeal waiver. *Cf. id.* (holding that enforcing the appeal

waiver when the sentence was below the statutory maximum did not amount to a miscarriage of justice).

## C. *Substantive Reasonableness of Henry's Life Sentence*

Henry also contends that his life sentence is substantively unreasonable. He "argues that the district court failed to properly consider his history and characteristics. Specifically, his age at the time of the offense, childhood trauma, intellectual ability, lack of a male role model, and his role in the offense." Henry's Br. at 15.

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). Because Henry's life "sentence is within the Guidelines range," we may afford it "a presumption of reasonableness." *Id.* (internal quotation marks omitted).

The district court expressly noted at sentencing that it had considered Henry's mitigation arguments, but it ultimately rejected them. Henry's disagreement with the district court's weighing of the mitigating and aggravating circumstances is insufficient to show that the sentence imposed is substantively unreasonable. *See United States v. Richart*, 662 F.3d 1037, 1054 (8th Cir. 2011) ("Simply because the district court weighed the relevant factors more heavily than [the defendant] would prefer does not mean the district court abused its discretion.").

## III. *Conclusion*

Accordingly, we grant the government's motion to dismiss in part Henry's appeal and affirm the judgments of the district court.

_____